## Akers, By, etc. v. Fidelity & Columbia Trust Company, Trustee, etc.

(Decided November 22, 1921.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1.  Wills—Construction—Nature of Interest Given—Rights of Cred-itors.—Under a will providing, "I do not desire to limit or name the amount which my trustee shall pay my wife and daughter, but it is my wish that it shall be more than amply sufficient to maintain them in a manner suitable to their condition and estate, absorbing the whole of said net income if my trustee thinks best," the daughter, upon the death of her mother, has a definite and fixed interest in the estate which may be subjected to her debts.

2.  Trusts—Life Estates—Action of Trustee in Preserving Income—Good Faith—Abuse of Discretion.—A life tenant incurred debts for which the income was liable, and which, if paid, would absorb the entire income for two or more years. The trustee permitted her to insure her life for the benefit of creditors. It charged interest on the sums advanced to meet certain debts, and paid the interest on other debts and the insurance premiums out of the income. This was done with the approval of the life tenant: Held, that the trustee did not act in bad faith or abuse a sound discretion.

3.  Trusts—Life Estate—Remaindermen—Right of Remaindermen to Complain of Application of Income During Life of Life Tenant.—Where the will does not provide that the income shall be accumulated for the remaindermen, and the corpus of the estate will go to the remaindermen unimpaired, and the trustee has the right in its discretion to pay the entire income to the life tenant, and it does not appear that in carrying out the arrangement to preserve the income it acted in bad faith or abused a sound discretion, the remaindermen have no ground for complaint.

4.  Trusts—Life Estates—Remainders—Liability of Corpus for Arch-itect's Plans.—Where the court authorizes the trustee to con-struct a home out of the corpus of the estate for the benefit of the life tenant and remaindermen, but the project is abandoned, the architect's fee for plans is properly payable out of the corpus.

TYLER BARNETT for appellant.

HUMPHREY, CRAWFORD & MIDDLETON, A. J. CARROLL and JOHN M. SCOTT for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Frank Guthrie Akers, by his guardian *ad litem,* Tyler Barnett, prosecutes this appeal from a judgment of the Jefferson circuit court, chancery branch, first division,

confirming the master commissioner's report of final settlement of the accounts of the Fidelity & Columbia Trust Company, trustee under the will of B. F. Guthrie, deceased.

The testator, who was a prominent and wealthy citizen of the city of Louisville, died in the year 1890, and left surviving him his wife and his daughter, Frank Guthrie, now Frank Guthrie Akers. Mrs. Guthrie and Mrs. Akers were life tenants under the will, and Mrs Akers' two children, Jane Akers Beckley and Frank Guthrie Akers, were the sole remaindermen. On her mother's death, which occurred shortly after the death of the testator, Mrs. Akers became the sole tenant for life. The material portion of the will is as follows:

"Out of the net profits and income of my estate, after paying taxes, assessments, insurance and repairs, there shall be paid, annually, to my wife, during the infancy of my daughter, and to my wife and daughter, and each of them, when the latter becomes of full age, such sum or sums as may be necessary to provide for the liberal and proper support and maintenance of them, and each of them. I do not desire to limit or name the amount which my trustee shall pay my wife and daughter, but it is my wish that it shall be more than amply sufficient to maintain them in a manner suitable to their condition and estate, absorbing the whole of said net income if my trustee thinks best. And such sum or sums so paid and advanced to my daughter shall be her sole and separate estate free from the debts and control of any husband she may hereafter have."

Hon. John Marshall was the first trustee under the will, and when he resigned in 1910, Mrs. Akers was indebted in the sum of $20,500.00, all of which had been incurred for the maintenance and support of Mrs. Akers and her children, and had been borrowed from the Fidelity & Columbia Trust Company by Mr. Marshall to prevent creditors from seizing the income. After the appointment of the Fidelity & Columbia Trust Company as trustee, Mrs. Akers, through a period of about ten years, increased her indebtedness in the sum of $8,200.00, which sum was advanced by the trust company to meet the claims of creditors. In addition to the foregoing indebtedness, aggregating the sum of $28,700.00, Mrs. Akers' indebtedness was as follows: To John M. Atherton, $3,000.00; to Mrs. Glover, $10,500.00, and to the Pennsylvania Mutual Life Insurance Company, $11,000.00,

thus making her total indebtedness, $53,200.00. To secure her creditors, Mrs. Akers insured her life for about $65,000.00, and the trust company permitted her to pay the premiums out of the net income of the estate. The interest on the above indebtedness has been met out of the income of the estate, and the principal has been slightly reduced from time to time by payments in installments.

The guardian *ad litem* attacks the settlement on the following grounds: (1) It was not within the sound discretion of the trustee to pay the principal of debts, or the interest thereon, due to third parties, or the premiums on life insurance policies taken out to secure the debts, as the debts were not authorized or binding on Mrs. Akers. (2) In taking from the income sufficient sums to pay the interest on and the principal of the loan it made Mrs. Akers, the trustee was dealing with itself for its own profit. (3) All the money used to pay premiums on insurance policies and the principal of debts and interest should be added to the corpus of the estate. (4) The $850.00 paid for architect's plans of the country home should be taken out of the income instead of the corpus of the estate.

It is argued that the trustee had no right to permit Mrs. Akers to incur any debts in excess of the income from the trust estate. The answer is that the trustee did not permit Mrs. Akers to incur the debts. On the contrary, she incurred the debts in spite of the advice, protest and strenuous efforts of each of the trustees to prevent her from doing so. Another contention is that the income from the estate was not liable for the debts incurred, and that being true, the trustee had no right to apply the income for the purpose of paying some of the creditors and securing others. This is not a case where the trustee has the power to withhold the entire income if he sees proper, Louisville Tobacco Warehouse Co. v. Thompson, 172 Ky. 350, 189 S. W. 245, but is a case where the beneficiary is entitled, as a matter of right, to so much of the income as is sufficient to maintain her in a manner suitable to her condition and estate. The only discretion vested in the trustee is whether the whole of the net income shall be applied to that purpose. As a matter of fact, each of the trustees exercised his discretion and determined that the whole of the income was necessary. That being true, it necessarily follows that Mrs. Akers has such a definite and fixed interest in the income that it may be subjected to her debts. Section 2355, Ken-

tucky Statutes; Marshall's Trustee v. Rash, 87 Ky. 116, 7 S. W. 879; Ratliff's Exrs. v. Commonwealth, 139 Ky. 533, 101 S. W. 978.   The trustee, therefore, was confronted with the following situation:   The income was liable for the outstanding debts, and unless the creditors were satisfied in some way, the debts would absorb the income for two or three years.   In the meantime, the life tenant and her children would have nothing to live on.   To meet this situation, the trustee advanced money to pay the claims of certain creditors, and had Mrs. Akers insure her life for the benefit of all of her creditors.   The insurance premiums and the interest on the outstanding debts were paid out of the income from the estate.  In charging interest on the sums advanced by it, the trustee merely took the place of the other creditors who would have been entitled to interest.  Whether or not this could have been done over the objection of the life tenant, it is unnecessary to decide.  As a matter of fact, she did not object, but the whole arrangement was carried out with her consent and approval, and we have no doubt that the trustee acted in good faith and exercised a sound discretion.   As the will does not provide that the income shall be accumulated for the benefit of the remaindermen, and the corpus of the estate will go to the remaindermen unimpaired, and as the trustee had the right, in its discretion, to pay the entire income to the life tenant, and it does not appear that in carrying out the arrangement to preserve the income it acted in bad faith or abused a sound discretion, it follows that the remaindermen have no ground for complaint.

Lastly, the guardian *ad litem* insists that the sum of $850.00 paid to the architect for preparing the plans for a country home should not be paid out of the corpus of the estate.   It appears that the erection of the home out of the corpus of the estate was authorized by the circuit court. After the plans were prepared and the garage and some other buildings erected, the idea of building the house proper was abandoned.   As the buildings themselves were to be paid for out of the corpus of the estate, and as plans were necessary before the buildings could be erected, it seems to us that the item in question was properly chargeable against the corpus of the estate.

Judgment affirmed.