## E. H. Shelman & Company, Incorporated, Bankers v. Livers' Executrix et al.

(Decided April 23, 1929.)

91

MOORMAN, WALLS, BEARD & HARDIN for appellant.

W. D. ASHCRAFT for appellees.

OPINION OF THE COURT BY COMMISSIONER STANLEY— Affirming.

On October 26, 1923, the appellee Mrs. Richard E. Livers, who is the widow of H. B. Livers, executed and delivered a note to the appellant, E. H. Shelman & Co., bankers, for $852.53, due four months thereafter. To secure its payment, she mortgaged a certain farm containing 123 acres and about 3,500 pounds of tobacco. The note not having been paid in full at maturity, the appellant instituted this suit against Mrs. Livers, individually, Thomas Hardesty and Mrs. Livers, as executor and executrix of the will of H. B. Livers, deceased, and his children and devisees to recover a judgment against Mrs. Livers for the debt and to enforce its mortgage. It was alleged that the deceased was indebted to plaintiff and others, and that he left but little personal estate; that the money was borrowed by Mrs. Livers to pay the debts of her husband, and for the care and maintenance of his children, as provided in the will, which was made a part of the petition.

The answer traversed the allegations respecting the use of the proceeds of the note sued on and the validity of the lien. It was affirmatively pleaded that the mortgage was void because Mrs. Livers was without power to execute it; that the note was her personal obligation; and that the personal representatives, acting jointly, could sell the land only for the necessary care and education of the children or for reinvestment. It was further set up in the answer that at the time of his death H. B. Livers owed the bank a note for an unnamed sum, on which John M. Livers was surety; that Mrs. Livers had made several payments on the note reducing the amount due on October 26, 1923, to $252.38; that she desired to borrow $600, and the plaintiff proposed to her if she would pay the balance of her husband's note, join the Burley Tobacco Association, and mortgage her crop of tobacco, it would let her have the money desired; that she accepted the proposition, and, in accordance with the agreement, executed the note sued on, which included $252.38, the balance due on the note of her husband; that in the preparation of the mortgage plaintiff's officer suggested that the land be included, and she advised him that she could not execute a good mortgage on the land. The answer further pleaded ''that said contract, agreement and understanding and the consideration of the execution of said note for $852.38, secured by said mortgage on said crop of tobacco, was and is a complete novation of the H. B. Livers note for the sum of $252.38.'' It was further pleaded that Mrs. Livers was entitled to a credit of $100 as of February 2, 1924, instead of $52.38, as was indorsed on the note.

No reply or other responsive pleading was filed to the answer. The evidence of Mrs. Livers as to the execution of the note and the credit claimed was in accord with the allegations of the answer. She testified that she used $500 of the money to buy her tenant's interest in the crops and $100 for work done about the place. She did not obtain possession of her husband's note and did not know what became of it. The president of the bank testified to nothing about the circumstances surrounding the execution of the note and mortgage or matters related by Mrs. Livers, but only that it took the amount of the new note to cover testator's indebtedness and to buy the tenant's tobacco. As to the disposition of the old note, he said: ''I suppose Mrs. Livers ought to have it; if not, it is canceled and in the bank.''

Judgment was awarded for the debt, as claimed, and it was further adjudged that the bank had a lien on the interest of Mrs. Livers in her husband's land, which the court construed to be a life estate, with remainder to the children, but that the life estate was burdened with a trust for the use and benefit of the widow and children until the youngest child shall become 21 years of age. It was further adjudged that the life estate, subject to the trust (or so much as might be necessary), should be sold to satisfy the judgment, the purchaser to obtain possession upon the termination of the trust. The court was also of the opinion that there was a novation of the original obligation of H. B. Livers. This appeal is prosecuted from that judgment.

The first clause of the will involved directed the payment of testator's debts and funeral expenses. The second paragraph devised all of his property to his wife "for her and her children (by me) use and benefit." The third one gave his wife "the right to use any of the principal of my estate that may be necessary in the care and education of our children." By the fourth clause testator appointed his wife and her brother as executrix and executor, giving them the right to sell the real estate devised for reinvestment; and further provided: "Said property or the residue after the maintenance of said children until the youngest becomes of age, then they may do as they desire with the property." The fifth clause declared that the executor and executrix shall have the right to sell and convey the real estate "to pay debts or to carry out the provisions" of the will. The sixth clause names testator's children. The seventh expressed a desire that no inventory be required. The eighth provided that any sales made by the executor and executrix should be "jointly and with their joint approval." The ninth clause provided that his wife be not required to give bond as executrix.

Appellant contends that the mortgage pledges the entire property to secure the payment of Mrs. Livers' debt: First, because she was vested with discretionary powers as to the use of the estate in caring for herself and children, and it was executed in the exercise of that power; and, second, if not, that, since the proceeds were used for the purpose of the trust, namely, to pay testator's debt and to care for the beneficiaries, it has an equitable lien on the land by subrogation to their rights.

It is further maintained that in any event as the window was given an absolute joint interest in the property her mortgage was on an undivided fractional share.

Appellees contend that the widow was without power to mortgage either the entire estate or her interest therein; that her interest could not be severed until the termination of the trust, at which time the estate should be distributed according to the statute of descent and distribution; and that the widow's interest is contingent upon her surviving the youngest child.

In our opinion neither construction contended for by the parties can be sustained. The lower court, in our judgment, properly construed the will.

It was the manifest intention of testator to have his debts paid and the residue of his property, particularly his land, held intact for the benefit of his widow and children. To insure that result he limited the right of disposition to certain purposes and required the joint action of both trustees if such disposition was made. The record discloses that both of those named to execute the will and carry out the trust accepted the responsibility and were acting in that capacity at the time the mortgage involved was executed. But we need not concern ourselves with the question whether one trustee could bind the estate, for the mortgage was executed by Mrs. Livers in her individual capacity and not as trustee. The questions to be determined in this connection are: (1) As to the power of Mrs. Livers to incumber her individual interest; and (2) what that interest was.

■ On the first issue we need only refer to Bowling v. Bank of New Haven, 219 Ky. 731, 294 S. W. 499, which is decisive. In that case the testator had devised his estate to his widow for life or widowhood, with remainder to his children. The executor, with the written consent of the widow, was given authority to sell the land for reinvestment in other real estate. The land was sold for $14,200, the proceeds being applied to the purchase of another farm for $26,500. The widow executed her personal notes for the difference, and these were secured by a lien retained by the vendor. On a suit to enforce the lien it was held that the proceeds of sale should be divided proportionately between the trust estate and the creditor, and also that the widow's entire interest in the trust

estate was subject to the payment of the notes. The court quotes with approval this text from 39 Cyc. 383: '

> "Also a mortgage of trust property is valid, regardless of whether it is authorized or not, when it is clearly assented to or ratified by the cestui que trust, and the mortgage may be valid as to part of the interests purported to be encumbered and invalid as to the remainder."

As in the Bowling trust, there was no restriction on the right of alienation of the individual interests in this estate. The interest of the widow was subject to her debts. Section 2355, Kentucky Statutes; Cecil's Trustee v. Robertson & Bro., 105 S. W. 926, 32 Ky. Law Rep. 357; Southern National Life Insurance Co. v. Ford's Adm'r, 151 Ky. 476, 152 S. W. 243; Akers v. Fidelity & Columbia Trust Co., 192 Ky. 850, 234 S. W. 725. But Mrs. Livers could not pledge or otherwise dispose of any estate other than that vested in her by the will.

■ Subject to the payment of testator's debts the estate was devised to the widow and children jointly until the youngest reached his majority. The estate as a unit was to be held in trust for the objects declared. It is clear that the share of each beneficiary was burdened with the interests of the others. To ascertain what the respective interests are resort must be had to certain rules of construction which have been hitherto applied to substantially similar expressions. It is the rule, consistently recognized by this court, that where there is nothing in the will to show a contrary purpose a devise to a person and his children vests a life estate in such person with remainder to his children. Weaver v. Weaver's Executors, 92 Ky. 491, 18 S. W. 228, 36 Am. St. Rep. 604; Naville v. American Machine Co., 145 Ky. 344, 140 S. W. 559, 37 L. R. A. (N. S.) 153; Rice v. Klette, 149 Ky. 787, 149 S. W. 1019, L. R. A. 1917B, 45. The reason for the rule, where a testator has provided for his wife and children, generally expressed, is that he did not intend a joint estate, which would likely result in a stranger to the blood of testator acquiring some portion of the estate. Houchins v. Houchins, 158 Ky. 190, 164 S. W. 791. There are a number of other analogous cases which might be cited, recent ones being Brock v. Brock, 168 Ky. 847, 183 S. W. 213, and Lacey's Executrix v. Lacey, 170 Ky. 166, 185 S. W. 495. Of particular application is the Weaver

case, supra, where the devise was to testator's wife, "who is requested and expected to manage same to the best advantage in caring for and educating the children and supporting herself." This was held to give the widow a life estate in all the property and that she was not restricted to the possession and use of less than the whole. By the express provisions of this Livers will, his children are given the same right to the use and benefit of the estate as is his widow. She then has a life estate, subject to the rights of the children, and the children have the remainder, plus the use and benefit of the property jointly with their mother until the youngest becomes 21 years old; and the lower court properly so held.

■ Addressing ourselves now to the issue as to the superiority of the bank's right to a lien over the rights of the devisees, resting on the claim that the proceeds of the note were used for the payment of testator's debt and to effectuate the object of the trust, namely, to care for the beneficiaries:

(a) After the payment of the testator's debt the balance of the proceeds was, as stated, used by Mrs. Livers, principally, to purchase the share of her tenant in the crops. This was in the nature of a business venture, and it does not appear to have been necessary to maintain or educate the children. Under the facts, therefore, the bank is not entitled to have a subrogated lien to secure them for money advanced for the purposes of the trust.

(b) The chancellor sustained appellees' contention that by accepting the note and mortgage sued on there was a complete novation of the original obligation of the testator, his opinion being based on Russell v. Centers, 153 Ky. 473, 155 S. W. 1149. It is recognized in that case that a novation may be had by the substitution of a new debtor with the intention of releasing the original one.

The proof is clear that the bank accepted the note of Mrs. Livers in payment of that of her deceased husband and canceled the latter obligation. It is apparent that the claim against the estate was released with the expressed intention of accepting Mrs. Livers as a new debtor and the mortgage in substitution of its right to subject the trust estate. Cochran's Law Lexicon defines "novation" to be: "The substitution of a new obligation

for an old one which is thereby extinguished; e. g., the acceptance of a note of a third party in payment of the original promisor's obligation, or the note of an individual in lieu of that of a firm.''

Mrs. Livers as one of several devisees was jointly bound for the debt to the extent that she acquired an interest in the property, and the acceptance by the creditor of one or more debtors in satisfaction of a pre-existing note operates as a novation of the original obligation. 46 C. J. 597; Smith v. Young, 11 Bush, 393. In the early case of Timberlake v. Baylor, 9 Ky. (2 A. K. Marsh.) 618, it was held that where a debtor procured a third person to be substituted in his place with the agreement of the creditor, the failure of the third person to pay the obligation did not revive the demand against the original debtor. See, also, People's Savings Bank v. Wright, 183 Ky. 362, 209 S. W. 342.

In Barret v. Clarke, 226 Ky. 109, 9 S. W. (2d) 1091, the subject of payment of pre-existing obligation by a note is considered, and in the opinion we said:

"In Harris, etc., v. Shaffer, 197 Ky. 54, 246 S. W. 26, it appeared that Shaffer had accepted the notes sued on in payment of others, and they were held to be an accord and satisfaction of the original obligations. The following text from 21 R. C. L. 72, was quoted in the opinion as authority: 'If there is an express agreement, by the creditor to receive a note as absolute payment and to run the risk of its being paid, it will be held to be an extinguishment or payment of the precedent debt, whether the note is afterwards paid or not.''

But appellant contends that if the contract between it and Mrs. Livers is void there could be no novation. Since her note was valid and the mortgage is valid in so far as it pledges Mrs. Livers' individual interest in the property, the contention cannot be sustained.

It appears that the chancellor correctly decided the case, and the judgment is therefore affirmed.