## Crowe v. Covington Trust & Banking Co.

Feb. 29, 1944.

As Modified on Denial of Rehearing June 6, 1944.

738

Sawyer A. Smith for appellant.

Rouse, Price & Adams for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

The appellant, J. M. Crowe, was the owner of 5/20 (¼) of the stock of the Barrington Woods Realty Company, a corporation, hereinafter called the realty company. On March 22, 1922, the realty company borrowed of appellee, The Covington Trust and Banking Company, hereinafter called the bank, the sum of $13,000 evidenced by thirteen $1,000 notes payable on or before three years after date, and secured same by a first mortgage on the property of the realty company. Before the loan was consummated, in addition to the mortgage on the property, the stockholders of the realty company, including appellant, executed and delivered to the bank the following writing:

"This Agreement Witnesseth:

"That, Whereas, The Barrington Woods Realty Company, a corporation under the laws of the State of Kentucky, is desirous of obtaining from The Covington Savings Bank and Trust Company, of Covington, Kentucky, a loan in the sum of $13,000.00, said loan to be secured by a mortgage on the property of said Realty Company in Kenton County, Kentucky, and

"Whereas, the said Covington Savings Bank and Trust Company is willing to make said loan, provided all of the stockholders of said Realty Company agree in writing to the execution of mortgage securing said loan, and further agree to indemnify said Savings Bank and Trust Company against any loss, cost or expense by reason of the making of said loan;

"Now, Therefore, in consideration of the making of said loan by said Savings Bank and Trust Company to said Realty Company, the undersigned, being all the stockholders of said Realty Company, do hereby consent to the execution of said mortgage and further agree to hold the said The Covington Savings Bank and Trust Company safe and harmless from any loss, cost or ex-

pense that may arise by reason of the granting of said loan, said guarantee being in proportion to the holdings of the several stockholders in said Realty Company, as follows:

> "A. G. Simrall 8/20
> "J. M. Crowe 5/20
> "C. W. Simrall 5/20
> "Jno. G. Simrall 1/20
> "L. B. Simrall 1/20"

When the notes matured on March 22, 1925, they were not paid or renewed and apparently nothing was done about the matter until on or about March 25, 1929, at which time, without any participation or action on the part of appellant, the other stockholders of the realty company and the bank made a settlement in regard to the notes executed in 1922 and other matters. The result of the settlement was that the realty company executed to the bank ten $1,000 new notes due and payable three years from date, or March 25, 1932, and cancelled or marked paid the old notes, and the mortgage which was given by the realty company to secure the old notes representing the 1922 $13,000 loan was released by the bank in the margin of the mortgage book where it was recorded in the office of the Kenton county court clerk, and the realty company executed to the bank a new mortgage on its property to secure the payment of the $10,000 new notes executed March 25, 1929, which mortgage was duly recorded in the county court clerk's office.

When the ten $1,000 notes executed on March 25, 1929, matured on March 25, 1932, no effort was made by the bank to collect the notes by foreclosure proceedings on the mortgage or otherwise and apparently nothing was done about the matter until 1938 when the bank sued the realty company to collect the $10,000 loan made in March, 1929, and to foreclose the mortgage executed by the realty company to secure the payment of the same. Judgment was rendered in favor of the bank and the mortgaged property ordered sold to satisfy the judgment, interest and cost, etc., which was done, but at that time the assets of the realty company were insufficient to satisfy the judgment and the bank realized only a small part of its debt, leaving a balance of $8,900 unpaid. In 1940 the bank brought this action against the appellant claiming that the $10,000 loan made by it to the realty company in 1929 was only a renewal or extension of the

original $13,000 loan made in 1922 and sought to recover of appellant 5/20 or ¼ of the $8,900, or $2,225, deficit which was appellant's proportionate share of the original $13,000 loan made in 1922 under the writing signed by appellant in 1922 in connection with the original loan.

·The writing which appellant and other stockholders signed, which is the basis of this action, is not dated but it is alleged in the petition of appellee that it was delivered on March 1, 1922, and this date of delivery is admitted in the answer of appellant. Appellant alleged in his answer that on March 1, 1922, the loan to the realty company by the bank was agreed upon and was to be due and payable on or before three years after date and secured by a first mortgage on the property of the realty company and the guarantee of the several stockholders of the realty company, and that the bank accepted the writing and the mortgage sued on and that the written acceptance of the writing was entered in the records of the bank and the period of the loan was for three years. The acceptance of the writing reads: "On motion of Mr. Crawford, the application of The Barrington Woods Realty Company for a loan of $13,000.00 payable on or before three years after date, same to be secured by first · mortgage on the property of said company, and the guarantee of the several stockholders of said Realty Company was duly approved."

Appellant further alleged in his answer that on March 21, 1922, the realty company executed and delivered to· the bank its first mortgage on the property of the said company pursuant to the agreement making and securing the loan and that the mortgage was duly recorded. He further alleged that the notes became due on March 25, 1925, and without any notice to him and without any effort by the bank to collect the same, the bank continued the past due obligation from March 25, 1925, until and including March 25, 1929, at which time the bank took new notes and a new mortgage and surrendered to the realty company all the notes of date March 25, 1922, and released the mortgage which was given by the realty company to secure the notes and took a new mortgage to secure the ten $1,000 new notes executed March 25, 1929. Appellant further pleaded as a defense that the bank renewed the loan to the realty company or made a new loan March 25, 1929, and accepted the realty company's notes on that date for the new loan and ac-

cepted a new mortgage and took no new or renewed guaranty or writing and thereby discharged him from liability on the writing which it obtained March 1, 1922, and upon which the original loan for a period of three years was made. Appellant also pleaded the 15, 7 and 5 year statutes of limitation, and no consideration for the writing sued on.

The material allegations of the answer were controverted by reply and the issues made and the case was referred to the master commissioner to hear proof and report. The master commissioner took proof and made his report in which he reviewed and set out the various transactions and what occurred from March 22, 1922, up until the institution of this action against appellant in 1940, substantially the same as that set out above, except in more detail. In conclusion the master commissioner said:

"The evidence shows that when the notes were renewed the bank did not have writing sued on renewed in any way and no new writing was taken. The obligation was renewed by new notes payable in three years and a new mortgage to secure it, thereby extending the time for payment, which extension released the guarantors."

"Kentucky Statutes, Sec. 3720b-120, subsection (6);

"Party secondarily liable discharged.—

"A person secondarily liable on the instrument is discharged: *  *  *

"(6) By an agreement binding upon the holder to extend the time of payment, or to postpone the holders right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved in the original instrument."

See also on the question of guaranty of payment or indemnity with respect to payment on time or extension of time, etc., Menefee v. Robert A. Klein & Co., 121 Cal. App. 294, 9 P. 2d 219; Trevathan's Ex'r v. Dees' Ex'r, 221 Ky. 396, 298 S. W. 975; Frick Co. v. Seibel, 233 Mo. App. 200, 118 S. W. 2d 497; 12 R. C. L., sec. 36, page 1084; 28 C. J., sec. 160, page 999; 38 C. J. S., Guaranty, sec. 75.

The bank filed exceptions to the master commissioner's report and the court sustained the exceptions and

held that appellant was liable on the writing executed March 1, 1922, and entered judgment against appellant for 5/20 or ¼ of the $8,900 deficit, subject, however, to certain small credits. This appeal follows.

It appears from the evidence that at the time of the settlement in April, 1929, the $13,000 original indebtedness had been reduced to $12,000. In addition to this unpaid balance of $12,000 on the old notes, plus $290 interest, the bank had accepted a note of the realty company for $2,500, plus $100 interest thereon, in all amounting to $14,890 for which sum the realty company issued the bank its check. According to the evidence the 1929 settlement or transaction was not handled as a renewal, but as payment of the old notes and a new obligation. Mr. Timmerding, secretary and treasurer of the bank, testifiied as follows:

"Q. When they renew a note do they deposit that to the credit of the maker and take his check for it, is that the practice? When a note is renewed, do you deposit the proceeds of the renewal note to the credit of the maker and take his check? A. No.

"Q. Do you ever do that? A. Not on a renewal."

The bank bases its claim of "renewal" or "extension" upon the bare fact that the realty company executed to it $10,000 in new notes and a new mortgage to secure them, while every step and act taken in the 1929 settlement clearly show that by that settlement the unpaid balance of the original $13,000 indebtedness was paid and satisfied and the bank then made the realty company a new loan and took a new mortgage to secure it. We think this was a complete novation and for that reason appellant is not liable on the writing sued on. E. H. Shelman & Co., Incorporated Bankers, v. Livers' Exr'x et al., 229 Ky. 90, 16 S. W. 2d 800. Since the case may be determined upon this basis it becomes unnecessary for us to express an opinion as to whether or not appellant was also released from further obligation on the 1922 transaction because of extension of time of payment without his consent, if the 1929 settlement should be construed as an extension of time or renewal of the original indebtedness.

Appellee bank insists, however, that appellant recognized his obligation on the old original indebtedness on the writing sued on by paying a certain amount of in-

terest in 1936 and 1937 on the indebtedness the realty company owed the bank. It must not be forgotten that appellant was still the owner of 25 per cent of the stock in the realty company and naturally interested in the company, or avoiding foreclosure proceedings on its property. Since appellant had been completely released and discharged from any and all obligations on the writing sued on by reason of the 1929 settlement, and was not personally liable as a guarantor, indemnitor or otherwise on the $10,000 new indebtedness, we do not think that the mere fact that he helped the other stockholders of the realty company pay interest on its indebtedness to the bank was a recognition of his liability on the writing sued on, or revived or brought to life the old obligation from which he had been completely discharged. The $10,000 new indebtedness was a valid obligation of the realty company to the bank and the interest thereon had to be paid, and since appellant was a stockholder in the realty company the value of his stock was affected by the new notes and mortgage regardless of whether or not the new notes were an extension or renewal of the old notes.

For the reasons stated, the judgment is reversed and remanded for proceedings consistent with this opinion.