## Ford v. Jones, et al.

(Decided February 23, 1917.)

Appeal from Fayette Circuit Court.

Subrogation—Sureties or Guarantors.—Where plaintiff was forced to pay off two sale bonds, by reason of his being an accommodation surety for defendants, whose property was being sold for the satisfaction of a mortgage debt. Held, that plaintiff, in so doing, placed himself in the original mortgagee's position, and the doctrine of subrogation applies.

ALLEN & DUNCAN for appellant.

A. F. BYRD for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

This is an unusually complicated record. It consists of about 700 full size pages of typewritten matter and embraces a great mass of evidence, as well as numerous pleadings, amendments and exhibits.

An appeal was had to this court from a judgment in the Fayette Circuit court including part of the same parties, the identical property and some of the same questions to be here considered. The opinion will be found in 113 S. W. 111. To make a detailed statement of fact would occupy many pages and would not be worth the space. The important facts are these:

Lizzie and Margaret Jones, of Lexington, with their joint money, purchased two certain lots on Deweese Street, and the title was made to and held by Lizzie

Jones for herself and sister, Margaret. Later on in May, 1891, Lizzie obtained a loan of $500.00 from a building and loan association with which to erect a house, and secured the loan by a mortgage upon the lots and the house. On July 10, 1891, she executed another mortgage to the same association for $1,000.00 upon the same property. Being unable to pay these mortgages, the association, in 1903, instituted suit against Lizzie Jones to enforce the lien and collect the debt. Judgment was obtained in 1905 and a sale of the property directed. At the sale by the commissioner, Lizzie Jones became the purchaser, but was unable to execute bond for the purchase price. Thereupon she and her sister, Margaret, and other members of her family induced Attorney S. S. Yantis, of Lexington, Ky., to loan Lizzie Jones $1,500.00, with which to pay off the judgment of the building association and also to take up certain other indebtedness then outstanding, and to secure this loan from Yantis, Lizzie Jones made, executed and delivered to Yantis, at his suggestion, a deed, absolute on its face, for the lots and house, for a recited consideration of $1,500.00 and simultaneously with the execution and delivery of the deed to Yantis, he executed and delivered to Lizzie Jones an agreement or option whereby he obligated himself to resell said property to her on or before December 31, 1905, for $1,595.00 and the accrued taxes, if she decided to purchase it on or before said date.

After the execution of the deed and writing, Lizzie Jones became and was adjudged insane and was confined in an asylum. While in the asylum the option to repurchase the property expired. Shortly thereafter, Mr. Yantis conveyed the property to Margaret Thurman, &c., who after demand for the possession of the premises, instituted ejectment proceedings to oust Margaret Jones, and the family of Lizzie Jones, and to obtain possession of the premises. Meanwhile Margaret Jones had caused herself to be appointed and qualified as committee for her insane sister, Lizzie Jones. As committee for Lizzie Jones she filed a petition to be made a party to the ejectment proceedings and set up facts showing that the deed was in fact a mortgage.

To save litigation, annoyance and cost, the parties made a compromise agreement, Margaret acting as committee for her insane sister, Lizzie, whereby the deed was

to be considered and held to be a mortgage and declared only a lien against the property described for the amount of Yantis' debt, and sold for the payment of same. Accordingly judgment was entered in favor of Yantis against Lizzie Jones and her property for the satisfaction of this mortgage and a sale was ordered. At this sale Margaret Jones became the purchaser at the price of $1,899.00. She was unable at first to make bond, so she solicited the plaintiff, Ford, to sign her bond as surety. Ford was a friend of the family of long standing, but was sick and begged to be excused. Finally at the earnest solicitation of Margaret Jones, committee for Lizzie Jones, Ford agreed to sign the bond upon condition that Margaret Jones transfer the benefits of her bid and purchase to him to secure him in case he had to pay the bonds, otherwise, to be the property of Margaret Jones. This was done.

When the first bond of $633.33 became due, Margaret Jones paid it off. Six months later when the second bond, for $716.33, became due, she failed and declined to pay the bond, and execution was levied upon the property of Ford to raise the amount. Ford insisted that Margaret Jones should pay the amount; that he was only an accommodation surety, but she failed to do so and he was compelled to and did pay both the second and third bonds when they became due. The third bond amounted to $691.90. The total amount paid by Ford was $1,408.23. He tried to get Margaret Jones to repay him, but she would not. Ford then brought this action to recover the money thus paid out, and to enforce a lien upon the property. Lizzie Jones had been restored to her former mental status, and became a party to the action, claiming the property, and denying Ford's right to subject the property to his claim. Moreover, she attempted to prosecute an appeal to this court from the judgment of the Fayette Circuit Court, enforcing the mortgage lien against her property in the case of Margaret Thurman, &c. v. Margaret Jones, &c. (See 113 S. W. 111, not officially reported). This appeal was dismissed in this court because Lizzie Jones was not a party to the action below.

The proceedings are too numerous, long and involved to state in detail, and we give only the more important. Many months later, however, to avoid this confusion of pleadings, the trial court allowed plaintiff

to file, and there was filed a substituted petition, setting up and covering most of the allegations made in the petition and several amendments thereof, and defendant filed answer to the substituted petition, and the case was all plead over again. In all of this confusion it is difficult indeed to discover the real issues.

The judgment below dismissed plaintiff's petition because in the opinion of that court, the five-year statute of limitation which was plead, had run. With this opinion this court cannot agree. The statute of limitation, upon any view of the case, had not run. Even the five years had not elapsed from the payment by Ford to the institution of the action, and we are of the opinion that the five-year statute of limitation does not apply.

The evidence here presents a plaintiff, who at the instance of a defendant whom he regards as a friend, became a surety on three sale bonds. He has no interest in the transaction. He is compelled to pay two of the bonds and interest. He receives no benefits from the sale or purchase. He took the precaution, however, before signing the bond, to have Margaret Jones, the purchaser at the sale, to transfer to him her bid and the benefits thereunder. This was for Ford's protection and was entirely satisfactory to all parties at the time. The money thus paid in by plaintiff, Ford, was applied to the extinguishment of the debt of Lizzie Jones to Yantis, and to secure which she mortgaged the property herein involved. In other words, this friend, the plaintiff, Ford, was required to and did pay two of the three sale bonds, amounting to $1,408.23, and this sum, plus the amount paid by Margaret Jones (first sale bond) extinguished the entire debt of Lizzie Jones to Yantis and saved the property of Lizzie Jones. Ford was obligated for the amount of the bonds and paid the debt of the defendant, Lizzie Jones. He did not make the payment voluntarily, but was compelled to do so, to save his property from sale under execution then in the hands of the sheriff and levied upon his property. Such a payment of the debt of another by a surety can not be said to be voluntary, but is such a payment as the principles of equity declare entitle the payor to be subrogated to the rights of the payee. The plaintiff, Ford, having been compelled to pay the debt of Lizzie Jones, contracted first to the building and loan association and afterwards, by mortgage to Yantis, is entitled

to be placed in the shoes of Yantis and the building association. Equity will not allow Lizzie Jones to accept the benefits and renounce the burden. Ford, by paying to Yantis his debt, and saving the property of Lizzie Jones from sale, placed himself in Yantis' position, and Lizzie Jones, in equity and good conscience, will not be permitted to say that Ford shall not be subrogated to the rights of Yantis under his mortgage lien. To hold otherwise would entail gross injustice.

. This court in the case of Fort Jefferson Improvement Company v. Dupoyster, 112 Ky. 793, used this language:

"The doctrine of subrogation is one of equity, to promote justice, and it may or may not arise from contract. The right to it depends upon the facts and circumstances of each particular case, and to which must be applied the principles of justice. Where a person furnishes money to pay the debt of another, if it is equitable, that he should be substituted for the creditor, it will be done."

The subject of subrogation is treated by many text writers, but we find no better definition than that in 37 Cyc. 363, which is as follows:

"Subrogation is the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt. The doctrine is one of equity and benevolence, and like contribution and other similar equitable rights, was adopted from the civil law, and its basis is the doing of complete, essential and perfect justice between all the parties without regard to form, and its object is the prevention of injustice. The right does not necessarily rest on contract or privity, but upon principles of natural equity, and does not depend upon the act of the creditor but may be independent of him and also of the debtor."

No one contends that Lizzie Jones was not of sound mind when she first made the mortgage to the building association, nor can it be asserted that Yantis either knew or had reason to suspect that Lizzie Jones was mentally unbalanced at the time the deed or mortgage was made to him. He was acting in perfect good faith. In fact, she appears to have been entirely capable of making either a deed or mortgage on June 30, 1905, when this instrument was executed, and the learned chancellor below found her to be of sound mind at that time.

By agreement of the parties and judgment of the court, the instrument purporting to be an absolute deed, bearing date June 30, 1905, was declared to be a mortgage only. This enabled Lizzie Jones to have all money arising from the sale in excess of the lien debts, and is all that equity or good conscience will allow. She will not be permitted to take the money of the plaintiff, Ford, to pay off a mortgage against her property and deny recourse to her benefactor.

The judgment is reversed and remanded with directions to enter judgment in favor of plaintiff, Ford, for the amount of his debt against Lizzie Jones, and adjudging a lien upon the property described in the substituted petition for the payment of the same, with interest thereon at 6% per annum from date of the payment of the bonds, and the cost of the action, subject, however, to such payments of interest, if any, as have been made by or for Lizzie Jones.