## Ewering v. Ewering, Executor, et al.

(Decided June 1, 1923.)

Appeal from Jefferson Circuit Court
(Chancery Branch, First Division).

1. Wills—Intention is to be Gathered from Entire Contents of Will.—The chief rule in construing a will is to ascertain the intention of testator from the entire contents of the will, and to give it such construction as will carry out that intention.

2. Wills—Rules of Construction Yield to Intention of Testator.—All other rules for the construction of wills are subsidiary, and surrender to the chief rule of carrying out the intention of the testator.

3. Wills—Intention to be Administered is that Expressed.—The intention of testator to be administered is that expressed by the language he employed, and not an intention which he may have entertained, but did not express.

4. Wills—Intention Manifested by Subsequent Clause Limiting Prior Absolute Devise Should be Given Effect.—The former rule that an absolute fee cannot be limited by a subsequent clause is no longer followed, since the will is not complete until all of it is written and duly executed, so that, if the testator inserts a clause qualifying an absolute gift, and thereby manifests his purpose not to devise an absolute estate by the first clause, his intention should be given effect.

5. Wills—Subsequent Disposition of All Property Previously Given Absolute Limits Gift to Life Estate—Limitation Over of Property Undisposed of Not Effective to Create Life Estate.—A subsequent clause destroying the power of disposition in the first and apparently absolute taker, and making entire disposition of the property after the first taker's death, limits the first taker to a life estate only; but, if the limiting clause purports to dispose of only that property which the first taker does not consume, it will be given no effect, and the first taker will be termed as taking an absolute estate.

6. Wills—Designation of Guardian for Incompetent is Held to Create Trust—"Guardians"—"Trustees."—A clause in the will appointing a son and daughter as guardians over an incompetent son, to pay him the income or such portions thereof of his share as they might deem necessary, used the word "guardians" as equivalent to "trustees," and placed the property of the incompetent son in trust.

JOHN L. WOODBURY for appellant.

BOLDRICK & GOCKE for appellees.

Opinion of the Court by Judge Thomas—Affirming in part and reversing in part.

Appellee, William Ewering, is the qualified executor of the will of his father and also a devisee under it. He and some of the other devisees brought this equity action in the Jefferson circuit court against the widow and one of her sons, the appellant, Henry Ewering, to obtain a judgment construing the will of the testator in two particulars, viz., what estate was devised to the widow, and whether the will provided for trustees for Henry, who is a person of unsound mind. The trial court held that the

widow took an absolute fee in the portion of the estate devised to her and that the will provided for trustees to take and handle the portion devised to the defendant, Henry Ewering, and from that judgment he, by his appointed guardian *ad litem,* prosecutes this appeal.

The first clause or sentence of the will bequeaths to each of the four children of the testator nine thousand dollars; the next one says: "I leave the balance of my estate, real and personal, to my beloved wife," and the last one says: "At my wife's death, I want her share to go to our children." We are called upon more than once each week to construe wills, and in all of our opinions it is stated without qualification that the first and chief rule in performing that task is to ascertain the intention of the testator from the *entire* contents of the will and give it such construction as will carry out that intention. We have likewise said in numerous cases held that all other rules provided by law for the construction of wills are subsidiary and surrender to the chief one of carrying out the intention of the testator as gathered from all of the language he employed; and we have also said that the intention to be administered is the one which the testator expressed by the language he employed and not the one which he may have entertained but did not express.

There existed a rule at the ancient common law to the effect that a remainder interest could not be limited either by deed or will after a fee, but since the enactment of the English Wills Act and the Statute of Uses it has been held that a future interest in property may be created to take effect in the future in derogation of a fee presently created in the first taker. Such future interest when created by a will is called an "executory devise," and when created by a deed it is known as a "conditional limitation." Following the ancient rule the courts of some of the states, including some early opinions from this one, held that when an absolute fee was first given, and which includes the unlimited power of disposition, it could not be limited or cut down by a following or subsequent clause; but more recently this court has held that, since a will is not complete until all of it is written and duly executed by the testator, and since the first clause giving an absolute estate is not effectual for any purpose until the will is executed, and if the testator before doing so inserts a sentence or clause qualifying the absolute one and thereby manifesting his purpose and intention not to devise an

absolute estate by the first sentence or clause he used, his intention so manifested would be given effect; but, if the subsequent clause was so worded as not to destroy the power of the devisee to exercise the chief right of an absolute owner to dispose of and consume the property, it would be construed as not qualifying or limiting the absolute estate first given and, therefore, ineffectual for any purpose. If, however, the subsequent clause was such as to destroy the power of disposition in the first and apparent absolute taker, and itself made disposition of the entire property after his death, then he would take only a life estate, the same as if it was expressly so stated in the will, upon the ground that such a construction clearly conformed to the plainly manifested intention of the testator. When, therefore, a will devises or bequeaths property to one absolutely, and in a subsequent clause *all of the same property* is disposed of to others after the death of the first taker, the latter will be deemed as having only a life estate in it, but if the limiting clause purports only to dispose of that portion of the property which the first taker does not consume or dispose of and, therefore, operates only on some remaining portion of it, it will be given no effect and the first taker will be deemed as taking an absolute estate, since in that event his absolute estate with the accompanying right to dispose of the property is not curtailed or diminished in any respect.

In the case of Phelps v. Stoner, 184 Ky. 466, the testatrix by the ninth clause of her will there involved gave to one of her sisters an absolute estate in a portion of her property. In a codicil she directed that at the death of her sister the property so devised to her by the ninth clause of the will should go to other named persons. In the opinion prior cases from this court are referred to and discussed, and we therein held that the sister took only a life estate in the property devised by the ninth clause of the will and in doing so said: ''In the case before us the testatrix did not either expressly or impliedly confine the operation of the limitation in the first codicil of her will to any remainder of the property which might be left at the death of Mrs. Atkinson, or to any portion of it which she might not dispose of. On the contrary, the limitation expressly disposes of the entire property after the death of Mrs. Atkinson. Such limitations have universally been upheld by this court upon the ground that

to do otherwise would violate the plain and manifest intention of the testator."

Some of the very recent cases following that one and adopting the rule therein applied are: Plaggenborg v. Molendyk's Admr., 187 Ky. 509; Linder v. Llewellyn's Admr., 190 Ky. 388; Greenway v. White, 196 Ky. 750, and American Christian Society v. Tate, 198 Ky. 621. In the latter case, in arriving at the above expressed construction, we employed this apt and pertinent language: "If we but let the will speak for itself instead of attempting to construe its plain, unambiguous terms according to a set of abstruse and arbitrary rules, there is not a chance to make a mistake; but if we apply said rules we are led far afield. The modern tendency of courts everywhere is to discard, when it can be done, all technical rules of construction anciently employed in the interpretation of deeds and wills, and measure the document by plain, common sense, giving it such meaning as its maker, a rational being, is bound to have intended by the words employed." It is our conclusion, therefore, that the will of the testator herein devised to his wife only a life estate in the property covered by the clauses referred to of his will and that the court erred in holding to the contrary.

In one clause of the will the testator said: "I appoint my son, William, and daughter, Mary, guardians without bond, over my son Henry, as long as he lives, whether he marries or remains single, to pay him the income or such portions thereof, of his share as they may deem necessary." The court construed that clause as placing the property devised to his son Henry in trust and providing for trustees to look after and manage it. In other words, he construed the word "guardians," as found in the will, as being tantamount to the word "trustees," and in this we think the court was undoubtedly correct. The judgment did not attempt to determine the nature and character of title of estate devised to the appellant, Henry Ewering, and that question is not before us, and we express no opinion concerning it.

Wherefore, the judgment is reversed to the extent indicated, and in other respects it is affirmed.