## Blessing et al. v. Johnston et al.

(Decided June 16, 1933.)

MORRIS B. GIFFORD and STEINFELD & STEINFELD for appellants.

SELLIGMAN, SELLIGMAN & GOLDSMITH for appellee Mayme Johnson.

BOOTH & CONNER for appellee administrator and his surety.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Ralph D. Johnston died testate, and a resident of the city of Louisville, Ky., on January 5, 1929, leaving the appellee Mayme Johnston as his surviving widow, and the papellants, Pauline Blessing and Lillian Ackerman, as his only surviving children and heirs at law. Their mother was the decedent's first wife, who died many years ago. The two daughters were married, and they and their husbands were and are nonresidents of Kentucky. Prior to his death, Ralph D. Johnston executed his will, in the first clause of which he directed his debts and funeral expenses to be paid. The second and third ones bequeathed to his two daughters $1 each, and the fourth clause said: "I give, devise and bequeath to my beloved wife, Mamie Johnston, all the remainder and residue of my estate both real and personal to be hers absolutely until her death and the remainder then to go to Lillian Ackerman and Pauline Blessing in equal shares." The other two clauses (fifth and sixth) appointed an executor of his will with prescribed powers. The estate of testator consisted entirely of personal property, mostly stock or interest owned by him in a Louisville development company, and its aggregate was about $14,000. He also carried life insurance to the amount of about $1,800 or $2,000, payable to his wife as beneficiary.

The nominated executor of the will declined to qualify, and appellee James E. Costello qualified as administrator with the will annexed, and executed bond

with the appellee National Surety Company as his surety. After his qualification, and following his adjustment of the affairs of the estate so as to enable him to do so, he turned over to the widow and appellee, Mayme Johnston (who in the meantime had become a nonresident of Kentucky), the sum of $7,000, and following that the two daughters, as plaintiffs below, and appellees here, filed this action in the Jefferson circuit court againts the administrator with the will annexed and his surety, and also against the widow (who later entered her appearance), seeking a construction of the above inserted clause 4 of testator's will, and averring that it devised and bequeathed to the widow only a bare life estate in the testator's property embraced by it, and that the administrator had violated his trust by turning over to her the above amount of the assets of the estate, and especially so in the absence of a bond from her for its forthcoming at her death to be distributed to plaintiffs in accordance with their interpretation of the will. They prayed for appropriate relief.

Defensive pleadings by both the administrator and Mrs. Johnston disputed the interpretation of the will so made by plaintiffs in their petition, and urged counter constructions of clause 4 of the will, to the effect (a) that it gave to the widow an absolute estate in the property embraced by it, but if mistaken in that, then (b) it gave to her a life estate with the right to the income therefrom, with the additional one to encroach upon the corpus if necessary to maintain her in the manner that the testator intended. Following pleadings and motions made the issues, and upon final submission, the court adopted interpretation (b) advanced by defendants, and fixed the amount that the administrator should pay to the widow at the sum of $200 per month, and which, necessarily, called for an encroachment upon the corpus of the devised estate, since its income could not possibly amount to that much, and from that judgment plaintiffs prosecute this appeal.

The learned trial judge wrote an opinion, and in it he points out what he terms two conflicting lines of opinions of this court in the interpretation of language and clauses in wills that he concludes are similar in every respect to the one involved in this case; and it must be admitted that some of the cases referred to in that opinion furnish some foundation for the court's

conclusion. However, an examination of the cases as arranged by the court on either side of the proposition will reveal that this court was endeavoring in each instance to follow the fundamental and basic rule for the interpretation of wills, to the effect that the intention of the testator, if not inhibited by law, shall always prevail. That rule, as so broadly stated, is without exception in this jurisdiction, and the same is true in other jurisdictions of this country so far as we have been able to discover. It is so universally true that we deem it entirely unnecessary to attach supporting cases and texts.

In ascertaining that intention, the first consideration is the specific language employed by the testator in expressing his desires and in determining what he meant by the employment of the particular word or phrase or clause involved. Courts not only have the right, but it is their duty, to look to and consider the surrounding circumstances of the testator; the amount of his property; the purpose he intended to accomplish by his devise; the cordial or other relationship existing between him and the devisee; the extent of his education and familiarity with the technical or other terms that he employed, and to other considerations having a tendency to throw light upon his sought after intention. It will thus be seen that the rule for the ascertaining of testator's intention or the means and method by which it is obtained are variable and depend upon no absolute and fixed standard, unless it should happen to be that the language to be construed has a fixed and universal meaning, and of such common understanding as to exclude the hypothesis that another and distinct meaning was intended.

In such supposed case there is but one alternative for the court to adopt, and which is, the enforcement of the intention that the testator so plainly expressed. If every will should be expressed in the same language, and that language had but one universally understood meaning, then there would be no occasion for courts of last resort to arrive at seemingly contradictory conclusions in the interpretation of two wills containing the same language. However, we would not be understood as contending that the members of this court, or any other appellate court, are infallible and never render divergent poinions. The members, being human, are

liable to err and to render contradictory opinions upon exactly the same state of facts in every particular, and for which reason it may be true that some of the opinions cited in briefs, and in the trial court's opinion, can be so classified, and which, if true, renders it necessary for one of them to be followed and the other repudiated in later cases, depending upon which one is deemed to be more in accord with the correct conclusion in the light of the considerations above enumerated.

It is correctly stated in briefs, as well as in the court's opinion, that this court, in the interpretation of the various wills brought before it for construction, has recognized and declared three sorts of estates given by the testator to the first taker in a particular clause of his will, and which are; (c) An absolute estate; (d) a bare life estate with no interest in the life tenant in its corpus, but only the right to appropriate during his life the income therefrom; and (e) an estate of somewhat of a mixed nature whereby the first taker is entitled to encroach upon the corpus if it be necessary to carry out the intention of the testator, and the apparent contradictions above alluded to arise from the cataloging of a particular case in one of the other of such classes, and which, we repeat, is due to our interpretation of the particular language employed by the testator as affected by its context and the other considerations hereinbefore mentioned.

Leading text-writers recognize the difficulty and apparent contradictions to which we have referred, as based upon the reasons we have assigned therefor, illustrations of which may be found by the statement of Mr. Justice Story in Sisson v. Seabury, Fed. Cas. No. 12913, when he says: "The cases almost overwhelm us at every step of our progress; and any attempts even to classify them, much less to harmonize them, is full of the most perilous labor. * * * To lay down any positive and definite rules of universal application in the interpretation of wills, must continue to be * * * a task, if not utterly hopeless, at least of extraordinary difficulty." Page on Wills (2d Ed.) sec. 807, in referring to the same condition of the law, employs this language: "In most cases courts are unwilling to construe a will in a certain manner merely because in a previous case they have construed a will containing similar expressions in the same manner. While such a method of con-

struction is, at first glance, very tempting, it is radically at variance with what we shall see is the fundamental rule of construction, namely, that the intention of the testator is to be ascertained, and that it is to be ascertained from the language used in the entire will. An attempt, therefore, to construe the separate phrases and clauses of the will in accordance with the precedents is likely to lead at once to a total disregard of the testator's intention, unless it happens that in the two wills taken each as a whole testator's intention is substantially. the same, and to be carried out in the same way. Such coincidence rarely happens.''

The same author also recognizes what we have hereinbefore said with reference to commonly understood words and phrases of a universal meaning so as to admit of but one interpretation when, in the same section, he says: ''In certain classes of cases, however, precedents are followed almost as rigidly in construction as it is in almost any other branch of the law. This exception exists where, by long usage and judicial recognition, certain words and phrases have come to have definite and recognized meanings as firmly established that their meaning really ceases to be a question of construction, and becomes rather a rule of property.'' Illustrating the trend of mind of the trial court, as well as that of the attorneys in the case, attention is called by them to the case of Gilligan v. Louisville & N. R. Co., 195 Ky. 1, 240 S. W. 739, wherein the testator gave in the sixth clause of his will, to his widow, ''all the rest and residue of my estate,'' and in the seventh clause provided that after her death ''I desire that all the estate remaining be given to my daughter,'' and we held that the wife took an absolute estate. That interpretation followed a rule (although somewhat arbitrary) of long standing in this court, to the effect that, when an absolute estate has been given to one with no limit of duration, it is incompetent for the testator in later clauses of his will to attempt to dispose of what the first taker might not consume during his life. In other words, that an effort on the part of a testator to dispose of a remnant of his estate that the first absolute taker might not consume is ineffective. We indicated above that such a rule was somewhat arbitrary, and which may be conceded is true, since, if the intention of the testator, as gathered from all parts of his will, is

the thing that the court should enforce, then such intention, if not prohibited by law, should be carried out. But the rule was adopted upon the theory that, when one had been given an absolute estate, or, perhaps more appropriately expressed, an unlimited and unqualified title with unrestrained dominion over the property, there was nothing left upon which the desire of the testator as to any unconsumed remnant could operate. That rule has become so firmly fixed that it might now be considered a rule of property, and the Gilligan opinion did nothing but follow it.

The same attorneys, and the trial court, after commenting on the Gilligan opinion, call our attention to the case of American Christian Mission Society v. Tate, 198 Ky. 621, 250 S. W. 483, written by the same member of the court who wrote the Gilligan opinion, in which it is contended an opposite conclusion was reached. The language employed in that case was: "I give and devise to my brother * * * all the property * * * whereof I may be possessed at the time of my death, to have and to hold the same unto him and his heirs forever, and at his death to his living bodily heirs, if he leave any; if not, my real estate to go to the Home Christian Missionary Society." The brother died without issue, or descendants of any, and it was held that the real estate went to the Missionary Society. We fail to detect any contradiction, by reason of that interpretation, of the conclusion reached in the Gilligan Case, since the language of the two wills are entirely dissimilar. It will be observed that in the Tate Case all of the property that was given to the first taker (the brother) was after his death, in certain contingencies, given to the Missionary Society. It was not devised any remaining remnant of testator's estate, or of the portion thereof that he devised to his brother. On the contrary, we repeat, everything that was given to the brother was given to the Missionary Society after his death under the prescribed conditions therefor.

The case of Ewering v. Ewering, 199 Ky. 450, 251 S. W. 645, followed the Tate opinion; but it is insisted that the later case of Snyder v. Snider, 202 Ky. 321, 259 S. W. 700, 701, departed from the holding in the Tate and Ewering opinions, and approved a construction in contradiction to the one adopted in those cases by following the Gilligan opinion. But an examination of the

784

language of the will in the Snyder Case will demonstrate, as we think, the error of that contention. It was and is: "I * * * will and bequeath to my beloved wife * * * all of my property. * * * At the death of my wife * * * all property [then] *belonging* to her shall be equally divided between my heirs," etc. (Our italics.) After referring to a number of prior cases, the conclusion was reached by us, and we so held, that in that part of the quoted language providing for a devise over after the death of the wife the phrase "all property belonging to her" was intended by the testator to embrace only that which she had not consumed during her life, which brought the case directly under the rule laid down in the Gilligan and other like opinions of this court. Whether or not we were correct in that conclusion might be questioned by some, but we still believe that the language employed in the Snyder will was substantially the same as that found in the one involved in the Gilligan and other similar cases.

It will be noted that in none of the cases so far considered was the first taker expressly limited to a life estate, and the rule above referred to as being the one applied in the Gilligan opinion has no application when such express language is found in the will, since in that case it cannot be contended that the first taker, whose estate is expressly limited to one for his life, takes an absolute fee in the property. So that, when a will so expressly limits the estate of the first taker to one for his life, then the provision for subsequent takers, whether all of the entire property or only a remnant thereof, becomes effective and will be enforced. It is unnecessary for us to discuss other cases belonging to the two respective classes referred to, since what we have said concerning those that we have referred to is sufficient to at least somewhat harmonize the apparent contradictions between them.

We now come to the consideration of the third class of cases partaking of the nature of both of those previously discussed, an illustration of which is Clore v. Clore, 184 Ky. 83, 211 S. W. 208. There are many others both prior and subsequent belonging to the same class. In that case the first takers took the property of the testator "to use and enjoy during their natural lives, with remainder, if any, to my son, J. Mason Clore," etc. It was held that, although the testator

limited the estate of the first takers to "their natural lives," he also inferentially expressed a consent or willingness that they should consume it all if necessary for their maintenance and support, since he devised to others after their death only the "remainder," if any; thereby implying that there might not be any remainder at all, and which conclusion could not have been reached but for the fact that the tetsator intended that the first takers, his wife and daughters, should encroach upon the corpus of the property in a manner to consume it during their lives, if necessary for comfortable support. Such appears to be the character of the instant will, and which we conclude comes under the doctrine of the Clore and other similar opinions, as did also the trial judge below.

It will be observed that the testator in this case did not limit, except by inference, the estate of his widow, the first taker, to a life estate, as was done in the Clore will; but, notwithstanding that omission, we think it cannot be successfully contended that the testator intended to give his wife the property mentioned in the fourth clause of his will in absolute fee-simple title, but rather that she should have the unqualified right to it throughout her life, and, when that terminated, whatever was left, which he designated as "the remainder," should go to his two daughters. At the same time it is the inevitable conclusion that he contemplated that there might be something left notwithstanding the comparatively small size of his estate, and in that event he desired his two daughters to have equally whatever was left. In such cases we have uniformly ruled that the first taker was entitled to receive from the devised estate a sufficient sum for comfortable maintenance and the supplying of reasonably needed wants. It may or may not be to the same extent as such comforts were supplied by the husband during his lifetime, with his earning power and ability; but such supplies should approach that extent as much so as is consonant with the size of the estate and as affected by the express intent and desire of the testator that the subsequent taker should receive some part of his estate.

Without lengthening the opinion by an analysis of the testimony in this case, we have concluded that the court fixed the allowance to the widow and appellee at a sum much greater than the facts and circumstances

justified, and no doubt greater than the testator expected or intended in view of the limited amount of his estate, plus his manifest desire for his daughters to share some portion of it over and above the nominal sum devised to them in clauses 2 and 3 of his will. The proof does not establish the fact that it will require $200 per month for the widow to live in reasonably comfortable circumstances, and we conclude that $100 per month is a sum sufficient to supply all of her reasonable wants, although it might require economical management on her part, but which we also conclude is incumbent upon her to do under the terms of her husband's will. If an emergency should arise, such as physical afflictions requiring the services of a physician, or the incurring of hospital expenses, then the court, on manifestation of that fact, should direct such expenses to be paid by the administrator, provided the amount thereof is reasonable. Such conclusions render it necessary for this case to be retained upon the docket, or to be filed away with leave of either party to place it upon the docket upon notice, so that such necessary emergency orders may be made if occasion requires.

The conclusions so reached render it unnecessary to dispose of the questions raised with reference to the maladministration of the estate by the administrator in paying to the widow the $7,000 referred to without requiring of her a bond for its forthcoming upon her death, and other consequential ones, since the eventual liability of the administrator, if any, will depend upon the amount of the corpus of the estate that will be necessary to meet the allowances herein provided for throughout the course of the widow's life, and which may continue for such a length of time as to wholly consume all of the testator's estate. Already nearly two-thirds of that amount, as measured by the allowances herein made, have been consumed, and, until payments by the administrator heretofore to the widow are consumed, as measured by the alowance we have herein made, he will deduct $25 per month from such allowance, unless it should be needed to defray emergency expenses as hereinbefore pointed out.

Wherefore the judgment is reversed, with directions to render one in conformity with this opinion, and for proceedings consistent herewith.

The whole court sitting.