## Owensboro Banking Co. et al. v. Lewis et al.
(Decided June 18, 1937.)

SANDIDGE & SANDIDGE for appellants.
LOUISE GASSER for appellant Riley.
CARY, MILLER & KIRK for appellee Mary J. Lewis.
JOHN A. DEAN for appellee M. L. Lewis' administrator.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Reversing.

Mary L. Lewis died intestate August 26, 1927, leaving surviving five children, none of whom are interested in the matter in controversy except Mary J. Lewis, appellee. In December, 1928, the Central Trust Company of Owensboro, administrator, began proceedings seeking settlement of her estate. The debts aggregated more than $12,500. Personal property left by decedent approximated $183.63; she also owned a 64-acre farm, worth about $5,000, with liens to the extent of a third of its value.

Wm. M. Lewis, the husband, predeceased the wife in November, 1923. He left a house and lot stiuated on Seventh street in Owensboro, but no personal estate. His debts and burial expenses amounted to $1,500. He left the following will, construction of which is in controversy:

"Sept. 6, 1892. I, W. W. Lewis, make this my last will. At my death I will that my wife, Lula Lewis shall have all of my estate of whatever nature that may be, to controll and to use for herself and my children. Provided my wife should ever marry again, I will that the balance of my estate that she may still have at that time, shall be equally divided between herself and my children, that is they may all sheare alike.

"I will that my wife shall execute my will without bond or securety. I further desire that my wife shall act as guardian for my children without bond or securety."

Mrs. Lewis never remarried, but with two of children occupied the home property until her death.

It was alleged in the petition that appellant was a creditor of Mary L. Lewis to the extent of $3,000, evidenced by a note of December 11, 1924; payment being secured by a mortgage executed by Mrs. Lewis on the home property. On February 6, 1928, the other children conveyed to Mary J. Lewis their undivided interest in the property, and she and the Banking Company were called upon to set up their respective claims. The Banking Company answered by way of counterclaim against the Trust Company, and cross-petition against Mary J. Lewis. They alleged that Mary L. Lewis, on December 11, 1924, borrowed $3,000, executing therefor a six months' note, its payment being secured by her mortgage on the home property, thereby creating in its favor a superior lien; that the $3,000 was borrowed and used by the widow "for the purpose of paying certain debts left owing by said W. W. Lewis," and for the purpose of supporting herself and the children.

It was asserted that by reason of the language of the will Mary L. Lewis was given the power to control and use the property for herself and the children, therefore she had power to execute the mortgage

for the purpose of paying the debts of W. W. Lewis, the "payment thereof being necessary to the use and enjoyment of the property" by the widow and children. The court was asked to adjudge its debt to be a valid claim against the estate of Mary L. Lewis to the extent of $3,000, a lien against and sale of the lot to satisfy its debt.

Mary J. Lewis answered the Banking Company's cross-petition, first denying the allegations, further pleading her deed and that at the death of Mary L. Lewis all her estate in the property was extinguished. She also alleged that prior to the deed Mrs. Lewis had executed to her a mortgage for $3,000, subsequent to the bank's mortgage.

By amended answer the Banking Company pleaded that at the time of the death of W. W. Lewis he was indebted to it in the sum of $500 on a note; that he owed one R. W. Owen $532.50 on a note, and the estate was indebted for the burial expenses of W. W. Lewis to the amount of $140, medical bills, all of which approximated $1,500. It was alleged that no one had qualified as executor of the will of W. W. Lewis, but that the widow and children took possession of and settled the estate.

One month after the death of W. W. Lewis, on December 6, 1923, the widow, a son Melvin, and daughter, Mary J., borrowed $1,500 from the bank for the purpose above stated, and executed a joint note. The note was not paid at maturity but renewed for six months. The renewal not having been paid, Mrs. Lewis, as is alleged, with the knowledge and consent of the two joint makers, executed the $3,000 note and the mortgage on the home property to secure its payment. The net proceeds of this note, $2,895 was advanced to Mrs. Lewis on the condition (which was carried out) that sufficient proceeds should be applied to extinguish the $1,500 note. The balance was placed to the credit of Mary L. Lewis and "was used by her in support and maintenance of herself and the two children of testator who were makers of the $1,500.00 note."

It was then alleged that when Mrs. Lewis and the two children paid the $1,500 on the debts of the W. W. Lewis estate, they were entitled to a lien on the house and lot to secure them in the amount so paid; and when

Mrs. Lewis paid the $1,500 note out of the $3,000, she was entitled to the same. Further that the bank was entitled to be substituted to the right of said lien, and that "the children of W. W. Lewis, and especially Mary J. Lewis, are estopped to deny said lien to the extent of $1,500.00, even if the court should be of the opinion that the widow had no right to mortgage the property under the will of testator."

Mary J. Lewis replied, denying that any part of the balance from the $3,000 note was ever used by her mother for her support, or for the support and maintenance of any of the children, and this allegation is borne out by proof. Later she filed an amended reply in which she set up a plea of limitation, which need not be elaborated, since same, as will later appear, is not available here. Again she pleads that the Banking Company, with the purpose of profit, entered into the new contract with Mary L. Lewis—the $3,000 loan —and in so doing substituted a new contract free from any right of subrogation. She also pleads the laches of the Bank Company in asserting its claim against the estate of Mary L. Lewis. The amended reply was controverted of record, completing the issue as between Miss Lewis and the bank creditor. Proof was heard, and on submission the court ruled:

The claim of the Banking Company for $3,000 with interest from June 11, 1925, is a valid claim against the estate of Mary L. Lewis.

That Mary L. Lewis, under the will, took a life estate in the willed property; that she had no power to mortgage more; and that upon her death the mortgage became ineffectual. Further, that the Owensboro Banking Company acquired no lien by reason of its mortgage, and that "any lien the Banking Company may have had, by way of subrogation or otherwise * * is now barred by limitation." The cross-petition as amended, as against Mary J. Lewis, was dismissed. The Owensboro Banking Company and another creditor prayed and were granted appeals.

All parties agree as to the rule that the court must appraise the entire will in endeavoring to ascertain what was in the mind of the testator at the time of the execution of the instrument, and may also consider the situation of the testator in relation to bene-

ficiaries. Blessing v. Johnston, 249 Ky. 777, 61 S. W. (2d) 635; Tucker v. Tucker, 259 Ky. 361, 82 S. W. (2d) 458; Whicker v. Strong, 258 Ky. 135, 79 S. W. (2d) 388; Price v. Aylor, 258 Ky. 1, 79 S. W. (2d) 350. The accord goes no further.

Appellant argues that applying the rule or rules, above mentioned, it is at once gathered from reading the will, Mrs. Lewis took the property under the will of W. W. Lewis with absolute power and right, in her discretion, to use and control same, thus evidencing the power to sell and dispose of it as she should see fit. That the use of the words "the balance of my estate that she may still have at that time" (referring to remarriage) showed that the testator intended that she should have unlimited power of disposition which must be construed as devising Mrs. Lewis the fee. The alternative is also argued by appellant to the effect that if a different view should be taken, on equitable principles the Bank Company should be rightfully subrogated to the rights of a lien acquired by Mrs. Lewis, her daughter and son, who paid the debts of the estate.

Appellee contends that Mrs. Lewis took only a life estate under the will of W. W. Lewis, hence the mortgage carried in lien no greater interest than her life estate. Also that the pleading of the bank shows accord and satisfaction of the note for $1,500 of Mrs. Lewis, the proceeds of which went to pay the debts of W. W. Lewis. That the right of subrogation should not prevail because to permit the plea to be invoked would be in disregard of the rights of others, and work an injustice and defeat a legal right or superior equity.

The will was written by Mr. Lewis on September 6, 1892, thirty-one years before his death, which occurred in November, 1923. At the time of the writing of the will the five children were quite young, the eldest being eleven or twelve years of age. It appears, if the fact has any bearing on the case, that all the children, except appellee and Melvin, had married and left home long prior to the mother's death.

Taking up first the contention that Mary L. Lewis acquired an absolute fee in the property devised, we find little difficulty in concluding that she was not so vested. It is apparent from a casual reading of the

will in question that there was no express devise of the fee to Mrs. Lewis. A fair test as to whether or not a fee is vested is to ascertain from the document whether or not there is provided an unlimited power of disposal. The rule is that where property is devised absolutely, the first taker acquires a fee, and any attempt at limitation is void. However, when a life estate is devised, with power of disposition, the limitation over is valid. Evans v. Leer, 232 Ky. 358, 23 S. W. (2d) 553, and cases cited. Here there was neither absolute devise nor any expressed power of disposition. If the language used by testator was subject to such construction as first above stated, we would have no difficulty in determining that Mrs. Lewis took fee title to the property in question. We have held time and again that the devise of a fee may by subsequent clauses of a will, or by subsequent words in the same clause, be restricted to life estate.

The language of the will in question is: "At my death I will that my wife Lula Lewis shall have all of my estate of whatever nature that may be * * *." Had he stopped at this point there would be no room for discussion, but he added: "To controll and use for herself and children." Clearly by the use of this language testator did not intend the vesting of a fee. A trust was created. He further added: "Provided my wife should ever marry again, I will that the balance of my estate that she may still have at that time, shall be equally divided between herself and my children, that is they may all sheare alike." It is not difficult to conclude that although the words "for her natural life" are not used on the will, it was intended by the testator that such of the estate as might be left at the death of the widow should go to the children. In case of marriage she was to take a child's part.

Though not taking a fee, she took something more than a life estate, by reason of the fact that she was charged to use and control the property for the benefit of herself and children, and by giving this language wide meaning it would not be out of harmony with previous holdings to say that it was the intention of the testator that as long as the widow remained unmarried she might use, control, and dispose of the corpus of the estate as might be needed for the reasonably necessary wants of herself and the children. Clore

v. Clore, 184 Ky. 83, 211 S. W. 208; Kincaid v. Bell, 205 Ky. 487, 266 S. W. 44; Sisson, Executrix, v. Sisson, 208 Ky. 843, 272 S. W. 15; Garriott's Ex'x v. Garriott, 208 Ky. 94, 270 S. W. 848.

In the Clore Case as first written, we held that under the language of the will similar in some respects to the language here, the widow had a right to sell where the necessity existed, but on a rehearing the original opinion was modified, and it was made plain that notwithstanding the corpus might be thus used, yet no disposition of the property could be legally made except by order of a court of competent jurisdiction. This rule has been adhered to in the Garriott, Sisson, and Kincaid Cases, supra; Fidelity & Columbia Trust Co. v. Harkleroad, 224 Ky. 5, 5 S. W. (2d) 477; Louisville Baptist Orphans' Home v. Igleheart's Adm'rs, 223 Ky. 702, 4 S. W. (2d) 693.

Here we are presented with a somewhat different situation from such as presented in the cases above cited. It appears that Mr. Lewis died in 1923, and his will, after a long period of time, was probated but no one qualified as personal representative. The widow was named in the will as executrix and guardian of the children. At the time of his death testator owed various sums, above itemized, which totaled approximately $1,500. This aggregate was a debt against testator's estate; creditors under the law had a lien against the estate for provable debts. As shown above, a short time after testator's death, Mrs. Lewis, and at least one of the children, executed the note to the bank for the $1,500. On the same day the note was executed, the bank took out of its proceeds enough cash to pay Mr. Lewis' note of $500, the balance of the net proceeds, $947.20, was posted to the credit of Mrs. Lewis, which was used immediately in the payment of the Owens' note, the funeral expenses, and other small claims against the estate. It is not disputed that the bank's claim to the $1,500 which went to pay the debts against the estate is a just claim, a contention which in conscience, equity, and justice appeals strongly to the court.

Counsel's argument on this point is that since the bank furnished the money with which the debts were paid, it was entitled to be suborgated to rights in a created lien to the extent of $1,500. There is

much force in this argument, as will be observed from Todd's Ex'r v. First Nat. Bank, 173 Ky. 60, 190 S. W. 468; Ford v. Jones, 174 Ky. 252, 192 S. W. 28, 30; Fort Jefferson Improvement Co. v. Dupoyster, 112 Ky. 792, 793, 66 S. W. 1048, 1049, 24 Ky. Law Rep. 1199, 2 L. R. A. (N. S.) 263, in all of which the principle of subrogation was said to be "one of equity, to promote justice, and it may or may not arise from a contract. The right to it depends upon the fact and circumstances of each particular case, and to which must be applied the principles of justice." Ringo v. McFarland, 232 Ky. 622, 628, 24 S. W. (2d) 265. Where a person furnishes money to pay the debt of another, if it is equitable that he should be substituted for the creditor, it will be done.

There can be little doubt that the transaction created an equitable lien in favor of the one who paid the debts of the estate. An equitable lien may arise from two sources: (1) A written contract which shows an intention to charge some particular property with a debt or obligation; (2) is declared by a court of equity out of general consideration of right or justice as applied to the relations of the parties and the circumstances of their dealings in the particular case. 17 R. C. L. 605; Ringo v. McFarland, supra.

The facts in regard to the execution of the first note a few days after W. W. Lewis' death have been fully recited. It is of no great importance whether the last note be treated as a new debt, or a renewal. In point of fact it may well be treated as a renewal. When the $1,500 debt merged into the new note, any right which Mrs. Lewis and her comakers had to proceed against the estate for the payment of the debt was merged into the new debt, with the mortgage to secure its payment.

When the widow and her comakers of the original note paid off W. W. Lewis' debts, it was done for the purpose of relieving the estate of such debts; preserving the home to the widow and the children who were with her, as all of the children had the right to be, had they so chosen, in so far as the will is concerned. By this act they acquired a first and superior lien on the entire property as against the other children. The right of subrogation arises by the fact that Mrs. Lewis and her comakers acquired the lien against the common

property of the ancestor. When the bank took up the $1,500 it became subrogated and was entitled to reimbursement from her comakers; in fact, from all the children. Dorn v. Fidelity & Columbia Trust Co., 204 Ky. 211, 212, 263 S. W. 681. The bank was entitled to step into their places and have the benefit of any lien in their favor. The only effect of the mortgage was to further secure the payment of the $1,500 for which it had already had an equitable lien. Todd's Ex'r v. First Nat. Bank, supra, and Ford v. Jones, supra, and other cases cited supra. In the Ford Case, supra, we said of the principle of subrogation:

"The doctrine is one of equity and benevolence, and, like contribution and other similar equitable rights, was adopted from the civil law, and its basis is the doing of complete, essential, and perfect justice, between all the parties without regard to form, and its object is the prevention of injustice. The right does not necessarily rest on contract or privity, but upon principles of natural equity, and does not depend upon the act of the creditor, but may be independent of him and also of the debtor."

It would be inequitable and unjust for the court to declare Mary J. Lewis the owner of the property under the deed which she alleges and no doubt holds, or to adjudge her alleged mortgages to have precedence over the mortgage of the Owensboro Bank to the extent of the $1,500. The language in the Ford Case with relation to the fact herein found is peculiarly applicable:

"She will not be permitted to take the money of the plaintiff * * * to pay off a mortgage against her property, and deny recourse to her benefactor."

See, also, Todd's Ex'r v. First Nat. Bank, supra; and Kratz v. Salughter's Executors, 185 Ky. 256, 259, 214 S. W. 878.

Appellee, attacking the bank's right of subrogation under the facts, contends that such was defeated because there was a novation when the $1,500 note was executed, and the original $500 note which W. W. Lewis owed the bank was satisfied out of the proceeds thereon, and a novation when the $1,500 note was satisfied out of the proceeds of the $3,000 note. This court

held with respect to novation in the recent case of Joseph G. Reed Co. v. Watkins, 241 Ky. 804, 45 S. W. (2d) 484, that in the absence of an allegation in the answer as to a mutual agreement or understanding that Watkins was to be released and Stambaugh substituted in his stead, it was improper to admit proof as to such an agreement or understanding.

And again in the more recent case of Olive Hill Limestone Co. v. Big Run Coal & Clay Co., 245 Ky. 657, 54 S. W. (2d) 53, 54, we pointed out the necessity for specifically pleading novation. In order to effect a novation a new debtor must be substituted in place of the old one, *with the intent to release the latter*. The court said: "The facts alleged constituted neither an accord and satisfaction, nor a novation. In order to effect a novation by the substitution of debtors, a new debtor must be substituted in place of the old one, *with intent to release the latter*. Kushner v. Knopf, 227 Ky. 369, 13 S. W. (2d) 271; Russell v. Centers, 153 Ky. 469, 155 S. W. 1149."

In this case when the bank accepted the $1,500 note, which was executed by the widow and two of the children, and advanced the money thereon for the purpose of saving the trust property, there is nothing indicating that it intended to (as far as the pleading or proof show) release the estate of W. W. Lewis. When the bank advanced the $1,500 and took the note of the widow and two children and satisfied the debts out of such sum, it had the right to believe that the widow and children, by paying the debts against the estate, had acquired a lien on said estate against the claimants, and that it would be subrogated to such lien. When it accepted the $3,000 note and mortgage of the widow, it acquired a lien to the extent of $1,500 on the estate. If this latter transaction whereby the mortgage was executed was invalid, as appellee contends, it could not work a novation.

This brings us to a consideration of the case of E. H. Shelman & Co. v. Livers' Ex'x, 229 Ky. 90, 16 S. W. (2d) 800, 801, which is relied upon by appellee to support the theory of novation. It may be conceded that the facts there are somewhat similar, but there are noted differences. Mrs. Livers used the bulk of the proceeds of the note executed for her "personal use." She was living and a party to the suit; there was

no preservation of a trust estate. The questions were, the power of Mrs. Livers to encumber her individual estate, and what that interest was. The court held her to have a life estate, and subjected that to the entire debt, subject to the trust. In that case the court found as a matter of law under the pleadings and facts, that there had been a novation. Such is not the case here. However, we need not discuss the facts in that case, since the discussion of the pleading in that and the instant case are sufficient on which to base a conclusion.

It developed in a suit to foreclose the mortgage that she had only a life estate in the property mortgaged, and that the mortgage, beyond her interest, was ineffecutal, for reasons stated. It was expressly pleaded in the answer of the widow and children in such foreclosure suit, that the acceptance of the note for $852 was understood to be and was executed as a complete novation of the original note of the deceased husband for $252, and there was no reply or other pleading controverting this affirmative plea of novation. The court said:

"The answer further pleaded that said contract, agreement and understanding and the consideration of the execution of said note for $852.38, secured by said mortgage on said crop of tobacco, was and is a complete novation of the H. B. Livers note for the sum of $252.38.' It was further pleaded that Mrs. Livers was entitled to a credit of $100 as of February 2, 1924, instead of $52.38, as was indorsed on the note. No reply or other responsive pleading was filed to the answer."

The court below and this court said that the proof was clear that the bank accepted Mrs. Livers' note in full payment of her husband's note, which was done with the expressed intention of accepting a new debtor. There being no denial of the express plea of novation in case, there was nothing for the court to do but sustain the plea and to hold that the execution of the second note constituted a novation. Furthermore, in that case the question of subrogation was not presented, and consequently not considered by the court. The Owensboro Bank is not entitled to a lien for the $3,000, since it is shown clearly from the proof that $1,500 did not go to the payment of debts, or preservation of the estate.

'A brief has been filed in behalf of Mrs. Minnie Riley, who filed a claim with the commissioner for notes held against Mary L. Lewis, which was approved by him and confirmed by the court, and we presume she filed no exception thereto. As we observe the record, Mrs. Riley did not file any pleadings, nor did the court in its judgment adjudge as to any right or preference which she may claim to have. An appeal was granted her nevertheless, but there is nothing here with relation to her rights. In the brief she contends that Mrs. Lewis took a fee in the property involved. This question is disposed of in the foregoing, but it is not intended that this opinion is to determine any right which she may present to the court below for determination. The appeal on the part of Mrs. Riley is dismissed without prejudice. So much of the judgment as denied the appellants lien on the property to the extent indicated is reversed, with directions to adjudge a lien thereon to the extent of $1,500 in favor of the Owensboro Banking Company.

Whole court sitting.