## Joseph G. Reed Company v. Watkins et al.

(Decided January 12, 1932.)

Z. WELLS for appellant.

FRED HOWES for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Reversing.

Prior to the 12th day of September, 1928, Bert Watkins and Paris Stambaugh were partners engaged in the mercantile business at West Van Lear, Johnson county, Ky., under the firm name of Bert Watkins & Co., but on that date Watkins sold his interest in the business to Stambaugh. The sale and transfer was evidenced by a written contract, under which Stambaugh assumed the payment of all outstanding liabilities of the firm. At the time of the dissolution of the partnership, the firm was indebted in the sum of $550.85 to the Joseph G. Reed Company, a corporation engaged in the wholesale mercantile business at Portsmouth, Ohio. For convenience, we shall hereinafter refer to Bert Watkins & Co. as the firm, and the Joseph G. Reed Company as the company.

On April 10, 1929, the company filed the account in suit in the Johnson circuit court against Watkins and Stambaugh, as former members of the firm, and caused summons to issue for each of them. Summons was immediately served upon Stambaugh, but as to Watkins, it was returned "not found." The former made no defense, and on the 22nd day of June, 1929, a default judgment was entered against him.

Thereafter, on the 6th day of January, 1930, Bert Watkins was served with summons, and on the 22nd day of February, 1930, he filed his separate answer, which he made a cross-petition against his former partner. The first paragraph of the pleading is a traverse of the allegations of the petition. In a second paragraph, after setting up the dissolution agreement between the partners and its provision relieving Watkins from liability on all outstanding partnership debts, it is affirmatively alleged that, a short while after the dissolution of the partnership and the assumption of its obligations by Stambaugh, he entered into negotiations with plaintiff for settlement of its debt sued on, and for extension of time for payment thereof, pending which, plaintiff

agreed to accept certain real estate in Ohio owned by Stambaugh as security or satisfaction for the payment of the account, and, without the consent of the defendant Watkins, extended the time for the payment of the debt and accepted partial payments thereon; that plaintiff thereby accepted Stambaugh for the payment and satisfaction of the debt and released Watkins from any further liability therefor; that these negotiations and extensions of time continued until Stambaugh became insolvent. The affirmative allegations of the answer were controverted by reply, thus completing the issues.

Defendant Watkins testified in his own behalf and also introduced his former partner as a witness. He testified that he notified plaintiff by a letter of the dissolution of the partnership and the agreement that Stambaugh was to assume and pay all partnership indebtedness, but it appears from the evidence that this letter was not written until after suit had been instituted on the account. He further testified that he had no talk, agreement, or understanding with the plaintiff relative to his liability on the account, but stated that Stambaugh told him that he was trading a piece of land to plaintiff and making arrangements to take care of the account.

From the evidence of Paris Stambaugh, it appears that, after execution had been issued on the judgment against him, he went to Paintsville and secured the promise of the sheriff to withhold levy for two days, in order that he might attempt to reach an adjustment with plaintiff. He then went to Portsmouth, where he had a talk with officers of the company, and testified that they agreed to give him time to pay the indebtedness and to leave Bert Watkins out of it; that he agreed to pay $50 each month and offered to convey to plaintiff some real estate which he owned in Ohio, and left his deed with the officers of the company, so they might look up the title and examine the real estate in order to determine what they would be willing to pay for it; that he later paid $50 on the judgment, but did not convey his real estate in Ohio to plaintiff, and the deed which he left with the officers of the company was returned to him.

Mr. P. M. Shaw, credit man for the company, testified that when Stambaugh came to Portsmouth after the execution had been issued he reported that he was successor of Bert Watkins & Co., and had undertaken to pay off the indebtedness of the firm; that if the execution was

levied it would do him much damage, and that if given time he would pay $100 per month. He stated that his only purpose in granting an extension of time was to enable Stambaugh to work the account out without any undue hardship or financial injury. He further testified that $50 had been paid on the account, and that Stambaugh left a deed with him and asked him to make an investigation as to the value of the land in Ohio, and, in the event an agreement could be reached as to the price, to let it be credited on the account; that the first information the company had of the dissolution of the partnership was when Stambaugh talked with representatives of the company in an attempt to secure a stay of the execution.

Z. Wells, attorney for plaintiff, testified that in the handling of the account he had a discussion with Paris Stambaugh on several different occasions, and the latter agreed to pay the account, but only paid $50.80; that he talked with both the members of the firm and told them that one or both could pay the debt; that Watkins said he ought to be released, since he had sold out to Stambaugh, and the latter agreed to pay all the firm's debts. He further testified that he did not recall that Watkins ever claimed to have been released from his obligations.

The jury returned a verdict in favor of the defendant, and from the judgment entered in conformity therewith plaintiff has prosecuted this appeal.

In seeking a reversal, counsel for appellant have argued a number of grounds involving the pleadings, evidence, and instructions, but the questions presented are so closely related and interwoven that a discussion of one in a large measure involves all the others, and a consideration of them discloses that they all turn on the one point, as to whether there was a novation. That is, whether by contract, express or implied, there was a valid agreement, understanding, and assent of all parties concerned whereby the indebtedness of the firm was discharged and a substituted and new obligation created involving the release of Watkins and a substitution of Stambaugh in his stead as the sole creditor. It is not specifically alleged in the answer that there was any such agreement or understanding, and neither are facts alleged from which a reasonable inference of such could be drawn.

In 46 C. J. 606, it is said:

"The consent of a creditor to a novation may be a legal result of his acts and conduct, even though he has not either expressly or impliedly agreed thereto. Thus the laches of the creditor may be deemed equivalent to a direct assent, and where conduct is such as to amount to an estoppel he will not be permitted to claim that he did not assent to the novation."

And in the case of Combs v. Jameson, 236 Ky. 733, 33 S. W. (2d) 686, 687, this court said:

"The purpose to release the old debtor may be inferred from the circumstances attending the transaction, and the subsequent conduct of the parties thereto."

It is alleged in the second paragraph of the answer that appellant, without the consent of appellee, granted indulgence by way of extension of time to Stambaugh and delayed the prosecution and collection of its claim until he had become insolvent, thereby accepting Stambaugh for the payment of the debt and releasing appellee from liability thereon. Thus, it will be seen, the answer attempts to bring this case within the rule announced in the authorities cited. But a careful consideration of the allegations of the answer and of the proof offered in support thereof reveals the fact that it does not come within the scope or purview of the announced rule. The evidence, in effect, merely indicates that the company agreed to release Watkins if and when Stambaugh had paid the debt.

Included in the proposition made by Stambaugh to officers of the company was a proposal to convey real estate in Ohio, provided an agreement could be reached as to the purchase price, and this was to be applied in satisfaction of the indebtedness. Obviously, there was not a completed transaction, and a mere conditional agreement as to the discharge of the old indebtedness will not amount to a novation. In the absence of an allegation in the answer as to a mutual agreement or understanding that Watkins was to be released and Stambaugh substituted in his stead, it was improper to admit proof as to such an agreement or understanding, but, from what we have already said, it follows that even had there

been such an allegation, the proof is not sufficient to establish any such contract or agreement between the parties.

The evidence fails to reveal such acts or conduct upon the part of officers of the company as to indicate that it assented to any discharge of Watkins, or that would estop it from denying that it had given such assent. Stambaugh was liable for the full amount of this indebtedness, and he promised to do no more than he was already legally bound to do, and the company simply consented that he might retire the indebtedness by the payment of monthly installments. In the proven circumstances, such a promise of extension of time for payment did not create a novation, or operate to relieve Watkins from his liability on the indebtedness.

In the absence of an allegation that an agreement was entered into between the parties, whereby appellant released appellee from payment of the firm obligation and created a new obligation by which Stambaugh alone was bound, it was improper to give instruction No. 1, submitting such an issue to the jury, and what we have already said, with reference to the proof as to the acts and conduct of appellant, makes it apparent that instruction No. 2 was improper.

The evidence is not sufficient to take the case to a jury, and the court erred in overruling appellant's motion for a peremptory instruction in its favor; therefore, the judgment is reversed, and the cause remanded for a new trial in conformity with this opinion.