## North Western Mut. Life Ins. Co. v. Eddleman et al.

(Decided Dec. 16, 1932.)

C. E. RANKIN for appellant.
POLIN & POLIN for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On August 3, 1922, two of the appellees and defendants below, Herbert R. Eddleman and Richard H. Nally, were the joint owners of a farm in Washington county containing 245 acres. On that day they borrowed from the appellant and plaintiff below, North Western Mutual Life Insurance Company, the sum of $6,500, for which they executed their joint note and also a mortgage on the farm to secure it according to the terms of the loan contained in the note, one of which was its payment four years from that date. Before it matured Eddleman sold his half interest in the farm to another, and his vendee assumed, as a part of his purchase price, half of the indebtedness to plaintiff, upon the theory that as between Eddleman and his joint owner (Nally) the former only owed that amount, although the fact was that both he and Nally, his joint owner, were each obligated to plaintiff to pay the entire debt. The vendee of Eddleman before the note matured conveyed the joint interest that he had purchased to still another, and that vendee assumed certain unpaid obligations of his vendor, among which was one-half of plaintiff's debt, and such was the situation when plaintiff's note matured.

The parties then applied to a local representative of plaintiff for an extension of time, and negotiations by correspondence culminated in a four-year extension

for the payment of the balance of the debt, the interest upon which had been paid, but only a small amount on the principal. The extension was in writing and signed by the then owners of the land, and also by appellee, Herbert R. Eddleman, one of the obligors in plaintiff's note. At its expiration only a small additional amount had been paid on the principal of the debt, and on October 15, 1931, this equity action was filed by plaintiff against the original obligors on the note, and also against their vendees who had assumed parts of it, as well as against all other subordinate lienholders on the mortgaged property. The petition as amended also attacked certain conveyances of real estate theretofore made by Herbert R. Eddleman as fraudulent, or as preferences, and the vendees in those conveyances were also made parties. The petition averred the facts as we have outlined and sought judgment against the original makers of the note for the unpaid amount, with interest, and also against the various vendees of the land for the amounts they assumed as part consideration for their purchases, and for proper relief relating to the alleged fraudulent conveyances.

Defendant, Herbert R. Eddleman, filed answer in which he averred a novation of his liability on the note because of its assumption by the various vendees of the property since it was executed and the mortgage given, and which, as he alleged, was agreed to by plaintiff, and that it likewise agreed and consented to accept the obligations of such vendees to their vendors in substitution of his liability on the original note. That defense was denied by a reply, after demurrer thereto was overruled, and upon submission the court sustained the pleaded novation and dismissed the petition in so far as it sought relief against defendant, Herbert R. Eddleman, and complaining of that judgment plaintiff prosecutes this appeal.

There is nothing in the record, either by way of pleading or proof, to show that plaintiff was even made aware of the various transfers of interests in the mortgaged land at the times they were respectively made, much less that it was aware of the terms upon which the conveyances were made. But, if the pleading had so alleged, there is no proof in the case to establish it, and the burden was on defendant and appellee Herbert R. Eddleman, to prove that fact, but he introduced no

testimony to support it. However, if plaintiff was informed at the times the transfers were made of the terms thereof and that the particular vendee had agreed to and did assume a part of its debt, there would still have been no novation or substitution of another debtor for the original one, unless plaintiff agreed and consented to such substitution and to release and relinquish the original obligors on its note.

The text in 46 Corpus Juris, 605, under the title "Novation," says: "Similarly the original creditor must assent to the transaction, for, in the absence of such consent, the debtor could not by his own act discharge his obligation and divest the creditor of his claim." On the next page (606) section 50, the text says: "Whether a novation has been accomplished or not depends upon the intention of the parties. This intent is the controlling element in determining the question, and unless the transaction was intended to extinguish the old obligation by substituting the new one therefor, a novation is not effected." The next section (51), on page 607, is in these words: "Generally an agreement to novate is not to be implied from the mere assumption of the liability of a debtor by a third person, and so, in the absence of an express agreement by the creditor, his consent to the substitution will not be implied from the fact that a third person, because of the assignment of the contract to him, or for some other reason, has agreed to discharge the obligation of the debtor. Nor will the consent of the creditor to the substitution be implied from the mere performance of the contract or the payment of money by the substitute, even though the creditor, having notice of the assumption or assignment, assents thereto and enters into performance of the contract with the new party, as by making deliveries, or making payments thereunder, for these transactions might well consist with the continued liability of the original party, the substitute acting for these purposes in the capacity of his agent. Similarly, in the absence of an agreement that the old obligation should be extinguished and a new one substituted, a novation will not be implied from the mere acceptance by the creditor of the obligation, or other security, of a third person. Thus, within the rule, the mere taking by the creditor of a note of a third person who has assumed the debt does not, in the absence of an agreement, operate as a novation releas-

ing the old debtor, even though the creditor surrenders the original notes to such third persons, but such new obligation will be considered only as a conditional payment or a collateral security, or in the nature of a guaranty.'' No new note was taken by plaintiff in this case, it retaining throughout the original one.

Cases from courts of many of the states are cited in support of that text, and to that portion of it saying, ''Nor will the consent of the creditor to the substitution be implied from the mere performance of the contract or the payment of money by the substitute,'' there is cited the case of Shaw v. Thornberry, 218 Ky. 140, 291 S. W. 14, and in that case we fully approved the inserted text. The requirement for the completion of a novation, that the creditor must assent thereto, and to the substitution of another debtor in lieu of the original one, and that such assent is not effected or to be implied from the mere consent to the arrangement between his debtor and the alleged substitute, without also further agreeing to accept the latter in lieu of the former, was approved by this court in the case of McGowan v. People's Bank, 185 Ky. 20, 213 S. W. 579, 581. The facts of that case may be found by reading that opinion, in which a novation was relied on, but in denying the defense we said: ''It is also urged that the guaranty of payment of the notes by Newman, when he transferred and assigned the notes to the bank, worked a novation, and had the effect of discharging the appellants from liability upon the guaranty. The guaranty of Newman was only an additional security given to the bank for the payment of the notes, and it is impossible to see how it in any way affected the guaranty of appellants, in the absence of any stipulation to that effect, as it could not have by any possibility worked any prejudice to their interests.''

In the case of O'Kain v. Davis, 186 Ky. 184, 216 S. W. 354, 356, one party to a contract transferred it to another who assumed its obligation as between him and his transferor all of which was with the knowledge of the obligor in the original contract. The transferor was sought to be held liable by the latter and he defended upon the ground that he was released because of his alleged novation of his obligation; but we denied that defense in this language: ''O'Kain also complains of the judgment against him for $250, claiming to have

been released from the contract by plaintiff, when it was in his presence transferred to and assumed by the hotel company; but we do not think this fact sufficient to constitute a release, as something more than mere silence upon the part of plaintiff after he had performed the services required of him would be necessary to prevent him from insisting upon O'Kain's compliance with his contract."

Again citing the volume of Corpus Juris, supra, page 609, sec. 52, we find it stated that: "In the absence of an express agreement, the consent of a contract obligor to the substitution of a new obligee will not be implied from the mere fact that he has notice of the transfer, or has engaged in transactions with the new party as by making or receiving deliveries, or by remitting or accepting payments, for these acts are not necessarily inconsistent with the intention to hold the original party to his primary contract obligations." In this jurisdiction a party for whose benefit a contract is made may sue thereon in his own name, although the undertaking is not directly to or with him. See cases in note (3) to section 18 of the Civil Code of Practice, and also the case of Blakeley et ux. v. Adams, 113 Ky. 392, 68 S. W. 393, 24 Ky. Law Rep. 263, and others cited in those opinions. See, also, the cases of Hendrix v. Meador, 228 Ky. 844, 16 S. W. (2d) 482; Combs v. Jameson, 236 Ky. 733, 33 S. W. (2d) 686; Reed Co. v. Watkins, 241 Ky. 804, 45 S. W. (2d) 484; and Olive Hill Limestone Co. v. Big Run Coal & Clay Co., 245 Ky. 657, 54 S. W. (2d) 53, decided November 4, 1932. Those cases and authorities and others cited in them firmly establish the doctrine of the text supra as prevailing in this jurisdiction to the effect that the mere knowledge and consent of the creditor to the assumption in whole or in part by another of his debtors' obligation to him will not, standing alone, create a novation so as to release the original debtor without an additional agreement and consent on the part of the creditor that the arrangement should be given that effect.

In this case plaintiff did collect interest, and, perhaps, some small payments on its debt from the alleged substituted debtors, but who, so far as it was concerned, were but additional and primary obligors for its debt and such receipts on its part, without the additional necessary agreement to the substitution, did not

effect the novation relied on by appellee and defendant, Herbert R. Eddleman. In corresponding with its local representative, and with attorneys for some of the defendants, plaintiff in its letters referred to its debt as a "loan" of $6,500 to R. H. Nally and Herbert R. Eddleman, now "Richard H. Nally and A. W. Eddleman," and it is insisted that the language, written long after the assumption of a part of the debt by any vendee, amounted to an agreement or consent on its part to the substitution of those vendees in lieu of the original obligors and to a release of the latter. But we find no support in the record for any such construction of, or effect to be given to, that language as so contained in plaintiff's letters. It clearly was but a method of designating the particular debt to which the correspondence related, and, since the lien to secure the debt was on property that later had been acquired by such vendees, their names were referred to, not as substituted obligors to plaintiff for the debt, but as *joint* obligors therefor, and as present owners of the mortgaged property. Such references manifested plaintiff's consent for the assumption of a pro tanto part of its debt by such vendees, but not to a release of its original debtors. We, therefore, conclude that if there was nothing else in the case, except that which we have referred to up to this time, the defendant, Herbert R. Eddleman, failed to discharge the burden cast upon him to establish the novation relied on.

But, as we have seen, he signed the agreement for the extension of the payment of the debt, it being in writing. One of its paragraphs says: "And the parties hereto hereby agree that said note and mortgage shall continue a first lien upon said premises and shall remain in force, with all their covenants and conditions, except as herein modified." The only modifications were the extension of due dates and a reduction of the interest from 5½ per cent. to 5¼ per cent. All other covenants and conditions in both the note and mortgage were expressly preserved, chief among which was Eddleman's agreement to pay plaintiff its debt, which obligation was by the extension agreement kept alive. But, he seeks to avoid that effect of his signature to that agreement through his contention that he signed it only for the reason that he was interested in the mortgaged property because possessing a lien subordinate to that of plaintiff to secure the addi-

tional purchase price of his vendee over and above half of his debt to plaintiff, and that he did not sign the extension agreement for the purpose of continuing and keeping alive his obligation on his original debt to plaintiff. The record contains evidence that plaintiff required his signature because of his secondary lien upon the property, but at the same time it appears in the record that it regarded him still liable as an original obligor on its note and without his signature to the extension agreement which it correctly believed was not necessary to continue his liability. However, since he held a secondary lien on the mortgaged property, plaintiff concluded that he should consent to that agreement in order to protect the present owners of the farm from being harassed with a foreclosure proceeding before plaintiff's debt matured under the extension agreement.

We, therefore, conclude that the fact relied on by defendant as relieving him from the consequences of signing the extension agreement is unavailable for that purpose, even if he had incorporated it in his pleading, but which was not done. We have carefully examined and closely read all of the cases and authorities cited and relied on by learned counsel for appellee and find them to be wholly inapplicable, since they refer to and involve facts materially different from those appearing in this case, and from which a novation, according to the principles hereinbefore discussed, was clearly established.

Wherefore, the judgment is reversed, with directions to set it aside and to adjudge defendant, Herbert R. Eddleman, liable for the balance of plaintiff's debt and interest, and for further proceedings consistent with this opinion.