**WELLS FARGO FINANCIAL KENTUCKY, INC.,**
**Appellant,**

v.

**John Robert THOMER; Dawn Alexis Thomer; United States of America; and Mooring Tax Asset Group, Appellees.**

**No. 2008–CA–001837–MR.**

Court of Appeals of Kentucky.

April 23, 2010.

Rehearing Denied June 28, 2010.

David A. Stringer, Cincinnati, OH, for appellant.

Robert E. Blau, Cold Spring, KY, for appellees, John Robert Thomer and Dawn Alexis Thomer.

Before KELLER and NICKELL, Judges; LAMBERT,[1] Senior Judge.

## OPINION

LAMBERT, Senior Judge.

This appeal pits competing lien priority claimants against one another. Appellant, Wells Fargo Financial Kentucky, Inc. (Wells Fargo), claims that its mortgage is superior by virtue of the future advance clause of the mortgage, while Appellees, John Robert Thomer and Dawn Alexis Thomer (Thomers), claim that their judgment lien achieved superior status when a new promissory note and mortgage were executed in favor of Wells Fargo. Our resolution of this case will depend upon the language of the relevant instruments, statutory and decisional law, and the Restatement (Third) of Property.

The facts are relatively simple. In March of 2000 James M. Grimme and Kathleen A. Grimme borrowed $152,000 from Norwest Financial America, Inc., Wells Fargo's predecessor, and, to secure the loan, placed a mortgage lien on their residence located in Alexandria, Kentucky.[2] The following year, in October of 2001, the Thomers obtained a judgment lien against the Grimmes' property for $15,000, which arose from an unrelated private loan for the purchase of a truck. The next year, in August of 2002, the Grimmes executed a subsequent promissory note and mortgage in favor of Wells Fargo in the amount of $158,000.[3] In due course, the Grimmes filed a bankruptcy petition and they are not parties to this proceeding. The contest before this court is between Wells Fargo and the Thomers and the issue is which of the parties has a superior lien on the Grimmes' real property.

The trial court granted summary judgment to the Thomers. It duly noted the language of the 2000 mortgage instrument which states that the mortgage "also secures payment of any future note or notes executed and delivered to mortgagee by mortgagor after the date hereof" but concluded that "the 2002 note paid the 2000 note in full." The trial court continued, "[t]he indebtedness evidenced by the 2002 note is not a renewal as a renewal has the effect of 'merely extending the time for payment rather than [being] entirely new obligations; ... a renewal note does not extinguish the original debt without some

---

1. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

2. All sums of money are rounded down to the nearest one thousand. Exact amounts and exact dates are unnecessary for resolution of the legal issues.

3. There is no dispute that by virtue of merger or acquisition Norwest Financial and Wells Fargo are the same party.

evidence that the parties so intended.' *American Fidelity Bank [& Trust Co. v. Hinkle,* 747 S.W.2d 620, 622 (Ky.App. 1988) ]." The trial court reasoned "Here, the 2002 note did not simply extend the time for payment of the original note. Rather, it not only paid the original obligation in full, it represented the borrowing of a larger amount of money by the Grimmes. There was no indication in the 2002 note that referenced the 2000 mortgage or Note or that it was a renewal of the 2000 Note." The trial court also properly noted that intent is the essential element in proving a novation but recognized that "[w]hen the Grimmes signed the second note in 2002 for approximately $158,000.00, they paid the 2000 note in full on the assumption that the future advances clause in the mortgage would secure the $158,000.00 second note."

From the foregoing, it is clear that the trial court viewed the execution and delivery of the 2002 note and mortgage as payment in full of the 2000 note and exoneration of the mortgage securing it. The trial court was persuaded that a novation had occurred in the Wells Fargo and Grimmes transaction, notwithstanding its paradoxical comment with respect to the Grimmes' assumption as to the effect of the future advance clause.

The parties and the trial court place considerable reliance on *Nolin Production Credit Ass'n v. Citizens National Bank of Bowling Green,* 709 S.W.2d 466 (Ky.App. 1986), and we have carefully considered their analysis of that decision. While certain language in the *Nolin* case is helpful, the facts differ so significantly that the holding is far from controlling here. *Nolin* dealt with an original mortgage on property in Nelson County executed by a husband and wife. The subsequent mortgage was on real property in three other counties and only the husband (following a divorce) signed the materially different subsequent note and mortgage. Moreover, the amount of the subsequent note far exceeded the future advance clause in the prior mortgage. In view of these facts, the court's holding that a novation occurred is rather unremarkable.

■ In *White v. Winchester Land Development Corp.,* 584 S.W.2d 56, 63 (Ky. App.1979), this court addressed the doctrine of novation as follows:

> Kentucky law is well-settled that a renewal note will not extinguish an obligation. *Cantrill Construction Co. v. Carter,* 418 F.2d 705 (6th Cir.1969), citing *Porter v. Bedell,* 273 Ky. 296, 116 S.W.2d 641 (1938). A renewal note is thus distinguished from a novation which does operate to extinguish an original debt. Whether a second note is a renewal of the original obligation, or a novation thereof, depends upon the intentions of the parties. 11 Am.Jur.2d Bills & Notes, ss 307, 914. The question of intention in such cases often turns, to a large extent, on the terms of the hypothecation or pledge agreement.

From *White* and numerous other authorities, we are instructed that an extension of additional credit under the future advance clause of a prior mortgage does not invalidate or reprioritize the security interest given provided the possible additional credit is disclosed in the mortgage instrument.

■ Kentucky statutes make provision for the formal release of mortgages and liens by marginal release or deed of release. KRS 382.360. However, as a matter of law, whether or not a formal release occurs, upon full payment of the indebtedness, the instrument of record becomes a nullity. *Warning's Ex'r v. Tabeling,* 280 Ky. 232, 133 S.W.2d 65 (1939). A recorded mortgage serves the purpose of establishing the lender's interest in the

land that secures the debt and notice to the world of the lien created thereby. KRS 382.520. Thus, we must focus upon the indebtedness rather than the mortgage for without the debt, there is no mortgage. "[W]hen the debt is extinguished or barred by statute of limitations or otherwise, the mortgage is likewise at an end." *Warning's Ex'r*, 133 S.W.2d at 67. However, the mortgage may be relevant evidence as to the parties' intent. From the foregoing, therefore, the controlling question is whether the evidence shows that the underlying indebtedness of $152,000 was paid, thereby extinguishing the mortgage securing it, or whether the underlying indebtedness remained and continued to support the original mortgage.

The amount of the 2000 debt was $152,000. The amount of the 2002 debt was $158,000. The 2002 note shows that from the $158,000, $141,000 was the "amount paid on your [Grimmes'] account," and that additional sums were advanced. At the time of the 2002 transaction with Wells Fargo, the Grimmes signed an acknowledgement of their right to cancel that contained the following language: "You are entering into a new transaction to increase the amount of credit provided to you. We acquired a mortgage, lien or other security interest on your home under the original transaction and we will retain that mortgage, lien or other security interest in the new transaction." Moreover, the HUD–1A Settlement Statement executed by the Grimmes refers to "Wells Fargo Financial non-cash disbursement" of $141,000. From these instruments, we have absolutely no doubt that $141,000 of the 2002 loan was the same debt as the 2000 loan. The loans were merely consolidated and additional sums were advanced.

 As previously stated, a contract novation relieves parties of the obligations thereunder and results in a new agreement, while an extension of additional credit under an existing obligation is merely an amendment and continuation of the original agreement. The burden to establish novation is on the party claiming its occurrence. *North Western Mut. Life Ins. Co. v. Eddleman*, 247 Ky. 116, 56 S.W.2d 561 (1932). As to the substantive law of novation, *Eddleman* quotes from 46 Corpus Juris 605 as follows:

> "Similarly the original creditor must assent to the transaction, for, in the absence of such consent, the debtor could not by his own act discharge his obligation and divest the creditor of his claim." On the next page (606) section 50, the text says: "Whether a novation has been accomplished or not depends upon the intention of the parties. This intent is the controlling element in determining the question, and unless the transaction was intended to extinguish the old obligation by substituting the new one therefor, a novation is not effected."

*Eddleman*, 56 S.W.2d at 562. A similar view was expressed in *American Fidelity Bank & Trust Co. v. Hinkle*, 747 S.W.2d 620, 623 (Ky.App.1988), as follows: "When there is asserted a discharge *without valuable consideration*, there must be evidence from which a fact finder could find intent by the parties that the obligor be released." (Emphasis in original.)

Applying these authorities to the case at bar, the Thomers failed to show that Wells Fargo and the Grimmes intended a novation and intended to effectively subordinate Wells Fargo's first lien position with respect to the Grimmes' mortgage. From the documents we have examined, we discern no such intent and we can think of no rational reason for Wells Fargo to have impaired its own security without consideration. All of the evidence supports the conclusion that the original in-

debtedness was merely consolidated and increased by means of the 2002 note. It is worthy of comment that the 2000 mortgage was not released of record. As such, we must conclude that the trial court erred in its conclusion to the contrary.

Our view in this regard is fortified by the breadth of KRS 382.520. Sections (1) and (2) broadly protect mortgagees where renewals and extensions of loans are made. Section (2) provides that the mortgage originally executed

> may secure any additional indebtedness, whether direct, indirect, existing, future, contingent, or otherwise, to the extent expressly authorized by the mortgage, if the mortgage by its terms stipulates the maximum additional indebtedness which may be secured thereby. Except as provided in subsection (3) of this section, the mortgage lien authorized by this subsection shall be superior to any liens or encumbrances of any kind created after recordation of such mortgage, even to the extent of sums advanced by a lender with actual or constructive notice of a subsequently created lien[.]

This language reveals overwhelming legislative intent to protect the interest of mortgage lenders. More modestly, *Bank of Maysville v. Brock*, 375 S.W.2d 814, 816 (Ky.1964), states the proposition "It is sufficient if the mortgage clearly shows it is to stand as security for both an original loan and for such additional indebtedness as may arise from future dealings between the parties."

We have carefully examined the Restatement (Third) of Property, Mortgages § 7.3 (1997), as it addresses the relationship and priority of senior mortgages vis-a-vis junior lien interests. This section duly notes circumstances in which the junior lienholder is materially prejudiced by subsequent loans, interest rate changes, or other changes in the senior mortgage. Relevant to the case at bar is § 7.3(b):

> If a senior mortgage or the obligation it secures is modified by the parties, the mortgage as modified retains priority as against junior interest in the real estate, except to the extent that the modification is materially prejudicial to the holders of such interest and is not within the scope of a reservation of right to modify as provided in Subsection (c).

The comment that follows § 7.3 discusses various types of transactions; i.e., construction mortgage loans, farm loans, replacement loans, and the like. Unmistakably, the comment articulates the view that lien priorities should be maintained unless there is demonstrable prejudice and lack of notice of the right to modify the senior mortgage.

> Where the original mortgage clearly states that it secures future advances and specifies no maximum monetary amount, the intervening lienor is not materially prejudiced. Since the intervenor takes its lien on notice that future advances are possible, it cannot validly claim injury based on the fact that the replacement mortgage exceeds the pre-release balance of its predecessor.

Restatement (Third) of Property, Mortgages § 7.3, cmt. b (1997).

We acknowledge discomfort in allowing Wells Fargo to recover sums in excess of the balance of its loan after the date the Thomers' judgment lien was filed. The record reveals that upon the 2002 consolidation of the loans, there was a balance of $141,000 and presumably the balance was somewhat greater when the judgment lien was recorded. A proper examination of the real estate records by Wells Fargo would have revealed that the judgment lien was filed some ten months prior to the 2002 transaction. The Restatement (Third) of Property view dis-

cussed hereinabove recognizes that in certain circumstances a junior lienor may be prejudiced by the holder of the senior mortgage, and the Thomers appear to have been prejudiced by the increase of the indebtedness from $141,000 to $158,000. However, the Thomers cannot satisfy the second prong of the Restatement view. They cannot show that the extension of additional credit was not within the scope of the future advance clause of the original mortgage. *See* KRS 382.520. In fact, the original mortgage provides that the maximum indebtedness secured by the mortgage could increase to the sum of $200,000.

The trial court decided this case by summary judgment. It determined that the requirements of Kentucky Rules of Civil Procedure (CR) 56.03 were met and applied *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky.1991). It properly recognized that issues of fact should not be decided and that the evidence of record should be examined to discover whether there were genuine issues of fact. We agree with the trial court that this was a summary judgment case. As shown hereinabove, however, we disagree as to which party should have prevailed.

For the foregoing reasons, the judgment of the Campbell Circuit Court is reversed and this cause remanded for further consistent proceedings.

NICKELL, Judge, concurs.

KELLER, Judge, concurs in result only.