Nancy Brock FORCHT, Appellant/Cross-Appellee

v.

FORCHT BANK, N.A., Appellee/Cross-Appellant

NO. 2013-CA-001433-MR AND NO. 2013-CA-001479-MR

Court of Appeals of Kentucky.

JUNE 23, 2017; 10:00 A.M.

Discretionary Review Denied by Supreme Court December 7, 2017

BRIEFS FOR APPELLANT/CROSS-APPELLEE: Richard M. Sullivan, Edward F. Busch, Bradley R. Palmer, Louisville, Kentucky.

BRIEFS FOR APPELLEE/CROSS-APPELLANT: Benjamin L. Riddle, Cynthia L. Effinger, Louisville, Kentucky.

BEFORE: KRAMER, CHIEF JUDGE; DIXON AND NICKELL, JUDGES.

OPINION

NICKELL, JUDGE:

Nancy Brock Forcht appeals from the Jefferson Circuit Court's grant of summary judgment in favor of Forcht Bank, N.A., on her claims for violations of KRS[1] 382.365[2] and the tort of outrage. Nancy also challenges several of the trial court's evidentiary rulings. On cross-appeal, Forcht Bank challenges the trial court's denial of its first motion for summary judgment on Nancy's claim for outrage. Following a careful review of the briefs and the law, we affirm the trial court *in toto.*

Nancy and her ex-husband, Theodore Bradley Forcht ("Ted"), owned a residence on Hartwick Village Drive in Louisville, Kentucky ("Hartwick property"), encumbered by a mortgage in favor of PRP National Bank[3] ("PRP Bank") executed in 2000. The mortgage secured a note bearing a maturity date of September 22, 2005. In May of 2002, the Board of Directors approved[4] a modification of the terms of the note.[5] PRP Bank released the mortgage on the Hartwick property on October 14, 2003. The record reveals the underlying indebtedness was not, in fact, paid off at the time the release was filed.

Ted began divorce proceedings against Nancy in 2004. On September 21, 2005, the parties executed a Property Settlement Agreement ("PSA") in which Ted agreed to convey his interest in the Hartwick

1. Kentucky Revised Statutes.

2. KRS 382.365 requires a lienholder to release its lien within thirty days of the date of satisfaction and provides for civil penalties for the failure to comply.

3. PRP National Bank was one of several community banks owned primarily by Ted's father, Terry Forcht. In 2007, PRP—along with nine other banks—collapsed its charter into Forcht Bank, N.A. Ted is a member of the Board of Directors of Forcht Bank. Terry is the Chairman of the Board of Directors and the primary shareholder. Ted and Nancy each have ownership interests in the bank.

4. Loans involving "insiders" required approval of the entire Board of Directors.

5. The modification reduced the charged interest rate, shortened the amortization term of the note from 300 months to 240 months, and set a new maturity date of August 22, 2005.

property to Nancy and assume all responsibility for payment of the outstanding indebtedness on the property. The following day, PRP Bank prepared a new note with a stated purpose of refinancing the debt on Ted and Nancy's personal residence. The new note called for a single advance to the Forchts; called for a balloon payment to mature on September 22, 2010; and contained signature lines for both Ted and Nancy. Although the note was processed and entered into PRP Bank's computer system, the entire loan file for the 2005 note is missing, and no executed copies of any documents can be located. Nancy denies executing the new note, insisting she was unaware of its existence.

On October 4, 2005, PRP Bank filed an "Affidavit in Aid of Title" with the Jefferson County Court Clerk's Office, purporting to re-file Ted and Nancy's 2000 mortgage on the Hartwick property, and asserting the release dated October 14, 2003, had been erroneously filed. The terms of the original mortgage were not modified in any way. On August 1, 2006, PRP Bank recorded another mortgage release purporting to release the mortgage on the Hartwick property for a second time. Nancy was not given notice of the filing of any of these documents.

On February 10, 2008, in conformity with the parties' 2005 PSA, Ted executed a Quitclaim Deed conveying his interest in the Hartwick property to Nancy. Nearly two years later, in January of 2010, Nancy contacted Forcht Bank seeking information on obtaining a loan to purchase a vehicle and about an outstanding personal loan unrelated to the Hartwick property. During that conversation, Nancy first learned of the 2005 note purporting to extend her obligation on the 2000 mortgage on her home. Over the next several months, Nancy attempted to determine her liability on the note she claimed she

never signed. Shortly before the maturity date of the 2005 note, Forcht Bank prepared new loan papers and sought Nancy's voluntary execution of them; Nancy refused to sign. During this time, she was informed by her daughter, Kristen Urbahn, that Ted repeatedly stated Nancy's refusal to execute a new mortgage would result in the institution of foreclosure proceedings by Forcht Bank. Nancy believed Ted's role as a director of the bank gave him authority and ability to initiate such an action. She contended the stress of the threats caused her severe emotional distress. No foreclosure proceedings were ever instituted.

On October 8, 2010, Ted—as the debtor—signed a "Change in Terms Agreement" purporting to extend the maturity date and modify the interest rate on the original 2000 loan as previously modified by the 2005 agreement. The agreement noted the loan was still to be secured by the Hartwick property. The modification was approved at a meeting of the Board of Directors of Forcht Bank. On November 3, 2010, Forcht Bank recorded an Affidavit in Aid of Title purporting to re-record—for a second time—the original 2000 mortgage, this time asserting the 2006 release had been inadvertently filed and the underlying indebtedness had not been satisfactorily extinguished.

Nancy subsequently requested Forcht Bank release the mortgage encumbering her property. Upon receiving no response to her written request, a second request was sent by her counsel demanding release of the allegedly invalid, and twice-released mortgage. Forcht Bank refused to honor the demand, asserting the prior releases had been inadvertently filed, the mortgage had been reinstated to secure the loan, and the underlying debt still existed. By counsel, on January 11, 2011, Nancy sent a third request for release of the mortgage,

this time citing KRS 382.365(4). Receiving no relief, Nancy filed the instant suit on February 18, 2011, seeking civil penalties and damages from Forcht Bank for violations of KRS 382.365 ("statutory claim"), slander of title, breach of the duty of good faith and fair dealing, violations of KRS 434.155, and breach of contract. The complaint was later amended to add a claim for damages on the tort of outrage.[6] On April 6, 2011, Forcht Bank filed—for the third time—a release of the mortgage encumbering the Hartwick property.

Following a period of discovery, on October 31, 2012, the trial court entered an order denying Nancy's motion for partial summary judgment on the statutory claim and dismissing that portion of the complaint upon concluding the underlying debt had not been satisfied and thus, the statutory release requirements had not been triggered. The order also found sufficient factual questions existed surrounding the outrage claim and therefore denied Forcht Bank's motion for partial summary judgment. Nancy's subsequent motion to reconsider dismissal of the statutory claim was denied.

On January 11, 2013, the trial court granted Forcht Bank's motion *in limine* to exclude any references to allegations of filing a false lien in violation of KRS 434.155(1) and that any such violation would be punishable as a felony offense. Shortly thereafter, the trial court granted Forcht Bank's motion to strike Nancy's proffered errata sheet which purported to make approximately fifty changes to her earlier deposition testimony, some of which changed entire answers or significantly altered the spirit and tone of the previously given answer, and which failed to offer

reasons for the proposed changes as required by CR[7] 30.05.

On January 30, 2013, the trial court granted another motion *in limine* filed by Forcht Bank to exclude any statements purportedly made by Ted threatening foreclosure on the Hartwick property. Based on this ruling, Forcht Bank renewed its motion for summary judgment on the outrage claim. In denying the motion, the trial court explained Ted's statements constituted inadmissible hearsay and were not, in any case, attributable to Forcht Bank. Further, noting Nancy's outrage claim alleged the actions taken by Forcht Bank caused such stress as to exacerbate her pre-existing medical conditions, the trial court concluded the guidance set forth in *Osborne v. Keeney*, 399 S.W.3d 1, 14-18 (Ky. 2012), while not final at the time of its decision, was persuasive and required medical or expert testimony to sustain an action based on emotional distress. Thus, Nancy was ordered to acquire and disclose an expert witness within forty-five days.

After Forcht Bank renewed its motion for summary judgment on the outrage claim, Nancy stipulated her emotional distress claims primarily arose from Ted's purported threatening statements. Nancy offered no medical or expert testimony to bolster her claims. Finding she could not produce admissible evidence of Forcht Bank's willful and outrageous conduct resulting in severe emotional distress sufficient to sustain a claim for outrage, on July 19, 2013, the trial court dismissed Nancy's claim. On July 25, 2013, an agreed order was entered voluntary dismissing all remaining counts in Nancy's complaint not previously dismissed by order of the court

---

6. Only the statutory and outrage claims are at issue in this appeal. Thus, no further reference or discussion of the other counts is warranted.

7. Kentucky Rules of Civil Procedure.

and further designating all prior orders as final and appealable. This appeal and cross-appeal followed.

Nancy presents five allegations of error in seeking reversal. She contends the trial court erred in: 1) granting summary judgment on her statutory claim; 2) excluding Ted's statements containing threats of foreclosure; 3) applying *Osborne* to the outrage claim; 4) excluding reference to potential criminal violations of KRS 434.155; and 5) striking her proposed changes to her deposition testimony. In a protective cross-appeal, Forcht Bank contends even if the trial court's evidentiary rulings were incorrect, it was still entitled to summary judgment on Nancy's outrage claim as she was unable to sufficiently establish the factual and legal bases necessary to sustain such a cause of action. We shall address each assertion in turn.

## SUMMARY JUDGMENT

Summary judgment serves to terminate litigation where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. Summary judgment should be granted only if it appears impossible the nonmoving party will be able to produce evidence at trial warranting a judgment in her favor. *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991). Summary judgment "is only proper where the movant shows that the adverse party could not prevail under any circumstances." *Id.* at 480 (citing *Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255 (Ky. 1985)).

On appeal, we must consider whether the trial court correctly determined there were no genuine issues of material fact related to Nancy's statutory claim and

Forcht Bank was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779 (Ky. App. 1996). Because summary judgment involves only questions of law and not the resolution of disputed material facts, an appellate court does not defer to the trial court's decision. *Goldsmith v. Allied Building Components, Inc.*, 833 S.W.2d 378 (Ky. 1992). Likewise, we review the trial court's interpretations of law *de novo*. *Cumberland Valley Contrs., Inc. v. Bell County Coal Corp.*, 238 S.W.3d 644, 647 (Ky. 2007). .

■ KRS 382.365 requires lienholders to release any lien against real property within thirty days of satisfaction of the underlying debt. Failure to do so vests the owner of the encumbered property with a right of action for statutorily defined damages of up to $500 per day. Establishing a valid claim for damages requires proof of: 1) satisfaction of the underlying debt; 2) written notice to the lienholder of the failure to release the lien; and 3) failure to release the lien without good cause following receipt of the notice. Inability to prove any of these elements is fatal to a claim. Here, the trial court determined Nancy could not, as a matter of law, prove satisfaction of the underlying debt and was, therefore, unable to proceed with her claim. We agree.

■ Nancy argues her obligation was satisfied as evidenced by Ted's execution of the 2005 note which she did not join and the 2010 change agreement provided further proof the original mortgage was no longer valid. She further relies on Forcht Bank's filing of a release of the underlying mortgage—on at least two occasions—in support of her belief the intent of the 2005 and 2010 transactions was to relieve her of any obligation to repay the debt and to unencumber her real property. She argues

these transactions constituted novations[8] which extinguished the original debt. Nancy alleges her lack of consent and participation in the 2005 and 2010 transactions, coupled with extrinsic witness testimony regarding the effect of the note renewals, constituted genuine issues of fact relative to when the underlying debt was deemed to be paid in full, thereby rendering summary judgment improper. However, regardless of any alleged factual disputes surrounding Nancy's participation or knowledge of the transactions or witness opinions of the effect thereof, the central issue on appeal is whether the undisputed 2000 mortgage continued to secure the 2005 and 2010 notes. If it did, Forcht Bank's status as a lienholder remained unchanged and Nancy's statutory claim must fail as the underlying debt had not been satisfied.

KRS 382.365(7) defines the date of satisfaction as the

> date of receipt by a holder of a lien on real property of a sum of money in the form of a certified check, cashier's check, wired transferred funds, or other form of payment satisfactory to the lienholder that is sufficient to pay the principal, interest, and other costs owing on the obligation that is secured by the lien on the property.

In *Nolin Prod. Credit Ass'n v. The Citizen's Nat'l Bank of Bowling Green*, 709 S.W.2d 466, 467 (Ky. App. 1986), a panel of this Court discussed the effect of debt renewals on satisfaction of underlying obligations.

> Our law is well settled that a renewal note will not extinguish an obligation. However, a renewal note that is a novation which operates to extinguish an

original debt is to be distinguished. Whether a second note is a renewal of an original obligation or a novation thereof, depends upon the intentions of the parties.

Novations are typically undertaken to effect an alteration of the parties to a contract, as was the case in *Nolin*, or to effect a material change in the parties' bargain. The transactions at issue here did neither. On their faces, the 2005 and 2010 transactions were continuations and refinancings of the original obligation including express provisions that the original security interest in the Hartwick property would remain in place. Changing the form of an obligation does not strip the obligation of its security. *Amlung v. First Nat'l Lincoln Bank of Louisville*, 411 S.W.2d 465 (Ky. 1967).

Additionally, KRS 382.520(1) specifically provides

> [i]n all cases where a loan is secured by a real estate mortgage, the mortgage originally executed and delivered by the borrower to the lender shall secure payment of all renewals, extensions, or interest rate modifications of the loan and the note evidencing it, whether so provided in the mortgage or not.

In *Wells Fargo Fin. Kentucky, Inc. v. Thomer*, 315 S.W.3d 335, 337 (Ky. App. 2010), this Court, in applying KRS 382.520(1), distinguished between a renewal note, which does not extinguish the underlying obligation, and a novation, which operates to extinguish an original debt. As previously stated in *Nolin*, whether a second note is a renewal of the original obligation, or a novation thereof, depends on the intent of the parties. *Id.* at 338 (citing

---

**8.** "A novation is the substitution of a new obligation for an old one with the intent to extinguish the old one. . . ." *M.A. Walker Co., Inc. v. PBK Bank, Inc.*, 95 S.W.3d 70, 76 (Ky.

App. 2002) (quoting *Truscon Steel Co. v. Thirlwell Elec. Co.*, 265 Ky. 414, 96 S.W.2d 1023 (1936)).

*White v. Winchester Land Dev. Corp.*, 584 S.W.2d 56, 63 (Ky. App. 1979)). The Court went on to point out:

> Kentucky statutes make provision for the formal release of mortgages and liens by marginal release or deed of release. KRS 382.360. However, as a matter of law, whether or not a formal release occurs, upon full payment of the indebtedness, the instrument of record becomes a nullity. *Warning's Ex'r v. Tabeling*, 280 Ky. 232, 133 S.W.2d 65 (1939). A recorded mortgage serves the purpose of establishing the lender's interest in the land that secures the debt and notice to the world of the lien created thereby. KRS 382.520. Thus, we must focus upon the indebtedness rather than the mortgage for without the debt, there is no mortgage. "[W]hen the debt is extinguished or barred by statute of limitations or otherwise, the mortgage is likewise at an end." *Warning's Ex'r*, 133 S.W.2d at 67. However, the mortgage may be relevant evidence as to the parties' intent. From the foregoing, therefore, the controlling question is whether the evidence shows that the underlying indebtedness of $152,000 was paid, thereby extinguishing the mortgage securing it, or whether the underlying indebtedness remained and continued to support the original mortgage.

*Id.* at 338-39. Furthermore, the Court emphasized "[t]he burden to establish novation is on the party claiming its occurrence." *Id.* at 339.

In *Thomer*, this Court found no evidence the parties intended a novation. Likewise, the trial court in this case, citing *American Fid. Bank v. Hinkle*, 747 S.W.2d 620, 622 (Ky. App. 1988), found no evidence the parties intended to release the 2000 obligation, but merely extended the time for payment. The controlling question is not whether Nancy intended a release of the original obligation, but whether the parties to the 2005 and 2010 notes intended the release. In support of her position, Nancy posits the 2005 transaction was a "refinance" of the 2000 indebtedness and the 2010 agreement so altered the terms of the original indebtedness that either or both should be construed as a novation of the original debt. She argues a new debt must have been created and satisfied the obligation for which the Hartwick property had been pledged.

Unfortunately for Nancy, the record is clear the underlying obligation has not been satisfied. It is undisputed Ted continues to make payments on the debt incurred by the couple in 2000. The plain language of the 2005 note and 2010 agreement expressly refer to the original note and its obligations, refer to the Hartwick property as collateral, and indicate the intent to modify rather than replace the 2000 loan obligation. Under these circumstances, we cannot say the trial court erred in concluding Nancy failed to carry her burden of proving a novation or that the underlying obligation had been satisfied. Thus, dismissal of her statutory claim was proper.

## EVIDENTIARY RULINGS

Nancy next presents three allegations of error related to evidentiary rulings associated with her outrage claim. She contends the trial court erred in excluding Ted's statements containing threats of foreclosure, concluding *Osborne* was applicable to the outrage claim, and excluding reference to potential criminal violations of KRS 434.155. We review a trial court's decision to admit or exclude evidence under the abuse of discretion standard. *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 577 (Ky. 2000). The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreason-

able, unfair, or unsupported by sound legal principles. *Id.* at 581 (citing *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)). Following a careful review of the record, we are unable to discern any abuse of discretion in the trial court's evidentiary rulings.

■ First, the trial court determined Ted's statements constituted inadmissible hearsay.[9] Nancy sought to introduce his allegedly threatening words through the testimony of their daughter, arguing she did not intend to introduce the statements for the truth of the matters asserted; *i.e.* Forcht Bank's intention to foreclose on her home, but rather to show Ted, as a director of the bank, made statements causing her severe emotional distress. She further contended the statements fell under one or more exceptions to the prohibition on admission of hearsay evidence because Ted was an agent of the bank with actual or apparent authority to speak on behalf of and bind the bank. KRE 801A(b)(3) and (4). She further asserted Ted's position within the bank lent greater credence to his threats, thereby instilling more fear in her and rendering the actual truthful nature of the statements essentially unimportant. The trial court rejected Nancy's arguments, which she reiterates on appeal. We are likewise unconvinced by her assertions.

Although Nancy attempts to argue to the contrary, it appears to us—as it did to the trial court—she sought to introduce Ted's statements to prove the truth of the matters asserted therein. The matter asserted by Ted's statements was the threat of foreclosure. It is the substance of these very threats upon which Nancy attempted to base her claim of outrage. There can be no other reason for admission of these statements than to prove they were made

and that Nancy believed them to be true. Thus, Ted's statements constitute hearsay and are inadmissible unless an exception is applicable. We are convinced no exception applies.

■ Nancy contends the "party admission" hearsay exceptions contained in KRE 801A(b)(3) and (4) apply to Ted's statements and, therefore, the statements should have been admitted. In pertinent part, that rule states:

> (b) Admissions of parties. A statement is not excluded by the hearsay rule, even though the declarant is available as a witness, if the statement is offered against a party and is:
>
> . . . .
>
> (3) A statement by a person authorized by the party to make a statement concerning the subject;
>
> (4) A statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship[.]

Contrary to Nancy's contentions, the record contains no evidence Ted had actual or apparent authority to speak for or bind Forcht Bank because of his role as a director of the bank. Further, Kristen stated when Ted made the statements he was not speaking to her as an agent of the bank but rather as a father. Nancy failed to show Ted was acting as an employee or his actions were in any way attributable to Forcht Bank. As such, the trial court correctly determined the party admission exceptions did not apply and properly excluded Ted's statements.

■ Next, Nancy argues the trial court erroneously concluded the mandates of *Osborne* applied to her outrage claim. In *Osborne*, our Supreme Court departed

9. Kentucky Rules of Evidence (KRE) 802.

from the long-standing "impact rule" in relation to claims for emotional distress. In so doing, the Court held a party seeking damages for emotional distress must present evidence of the recognized elements of a common law negligence claim and must also show—by presenting expert medical or scientific proof—a severe or serious emotional injury, *i.e.*, one a reasonable person, normally constituted, would not be expected to endure. 399 S.W.3d at 17-18. Nancy contends *Osborne* applies only to claims of *negligent* infliction of emotional distress (NIED) and not claims of *intentional* infliction of emotional (IIED) distress as presented in the instant case. Our reading of *Osborne* reveals no such intent by the Supreme Court.

Nancy's position is based on her belief our Supreme Court adopted Tennessee law on the matter which specifically rejects the expert testimony requirement in IIED claims. The *Osborne* Court agreed with the holding of the Supreme Court of Tennessee in *Camper v. Minor*, 915 S.W.2d 437 (Tenn. 1996), that a party should only recover for "severe" or "serious" emotional distress which must be proven by resort to expert or medical testimony. Nancy argues a later case from the Supreme Court of Tennessee, *Miller v. Willbanks*, 8 S.W.3d 607 (Tenn. 1999), concluded expert testimony was *not* required in IIED cases and, because our Supreme Court adopted Tennessee law, the same exception should apply here and limit the expert requirement to cases involving claims of NIED. Unfortunately for Nancy, a plain reading of *Osborne* reveals our Supreme Court did not so limit its holding. Further, had the Supreme Court so desired, it clearly could have adopted *Miller's* limitation but it chose not to do so. This Court is bound to follow the law as stated by our Supreme Court. *See Kindred Healthcare, Inc. v.*

*Henson,* 481 S.W.3d 825, 828 (Ky. App. 2014) ("As an intermediate appellate court, this Court is bound by published decisions of the Kentucky Supreme Court. SCR [10] 1.030(8)(a). The Court of Appeals cannot overrule the established precedent set by the Supreme Court...."). Thus, the mandates of *Osborne* are applicable to this matter as the trial court correctly concluded. Because she could not establish the basic elements of her claim, the trial court properly granted summary judgment in favor of Forcht Bank on Nancy's outrage claim.

For her third and final challenge to the trial court's evidentiary rulings, Nancy argues it was error to prohibit her from informing or implying to the jury that Forcht Bank's actions constituted a violation of KRS 434.155, a criminal statute related to the filing of an illegal lien. The trial court's ruling restricted Nancy from referencing the criminal portion of the statute but did not prohibit her from informing the jury a statutory prohibition existed regarding the filing of "illegal" liens. The entirety of her argument seems to be the trial court's ruling was prejudicial to her and she should have been permitted to reference the statute merely to inform the jury of the law. She presents little, if any, support for her position. We will not search the record to construct Nancy's argument for her, nor will this Court undergo a fishing expedition to find support for underdeveloped arguments. "Even when briefs have been filed, a reviewing court will generally confine itself to errors pointed out in the briefs and will not search the record for errors." *Milby v. Mears,* 580 S.W.2d 724, 727 (Ky. App. 1979). No sufficient basis having been given to conclude otherwise, we are convinced

10. Rules of the Supreme Court of Kentucky.

the trial court's decision was correct under the circumstances.

## STRIKING OF DEPOSITION ERRATA

Nancy was deposed on January 19, 2012. On March 2, 2012, she signed an errata sheet proposing approximately fifty technical and substantive changes to her previous testimony. While some of the proposed changes concerned minor clarifications, several made wholesale changes and additions which altered entire answers even to the point of complete reversals of course. No explanation or reasoning was provided for any of the proposed changes. Forcht Bank requested to strike the errata as noncompliant with the requirements of CR 30.05 which permits proposed alterations to deposition testimony only when accompanied by reasons for any such proffered change. The trial court concluded Nancy had not complied with the rule stating, "CR 30.05 is not intended to give the deponent a second opportunity to create factual disputes or present testimony in a more favorable light."

Nancy alleges the trial court erred in striking her proffered deposition errata, arguing the proper remedy for any alleged irregularities or violation of CR 30.05 is to permit the objecting party to cross-examine the witness regarding the changes. While it appears no Kentucky case has discussed this issue, and Nancy presents an interesting academic question, we believe our resolution of the other issues presented in this appeal renders this question moot. Even were we to resolve the matter in her favor, Nancy has no viable causes of action remaining in the trial court so reversal of the trial court would accomplish nothing. Therefore, no further discussion is warranted.

## FORCHT BANK'S CROSS-APPEAL

Forcht Bank has filed a protective cross-appeal wherein it contends the trial court should have granted it summary judgment on Nancy's outrage claim earlier in the litigation. It argues Nancy failed to sustain her burden of proving the basic elements of her claim. However, because we have previously affirmed the trial court's grant of summary judgment on Nancy's outrage claim, the allegations contained in the cross-appeal are moot. Further discussion is unwarranted.

For the foregoing reasons, the judgment of the Jefferson Circuit Court is AFFIRMED.

ALL CONCUR.